**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

MARK STEVEN ELK SHOULDER,
*Defendant-Appellant*.

No. 10-30072

D.C. No.
1:09-cr-00023-JDS-1

ORDER AND
OPINION

Appeal from the United States District Court
for the District of Montana
Jack D. Shanstrom, Senior District Judge, Presiding

Submitted June 1, 2012*
Portland, Oregon
Opinion filed: October 4, 2012
Opinion withdrawn and new Opinion filed:
September 23, 2013

Before: A. Wallace Tashima, Carlos T. Bea,
and Sandra S. Ikuta, Circuit Judges.

Order;
Opinion by Judge Ikuta

---

* The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

**SUMMARY**[**]

**Criminal Law**

The panel withdrew an opinion filed October 5, 2012, and filed a superseding opinion affirming a judgment in a case in which the defendant was convicted of failing to comply with the registration requirements set forth in the Sex Offender Registration and Notification Act.

The panel rejected, as foreclosed by *United States v. Elkins*, 683 F.3d 1039 (9th Cir. 2012), the defendant's argument that application of the SORNA registration requirements to him on the basis of his earlier conviction violates the Ex Post Facto Clause.

The panel rejected as foreclosed by *Elkins* the defendant's due-process argument that because Montana had not yet conformed its sex offense registration to SORNA's requirements, it was impossible for him to register "as required by" SORNA. The panel also held that because the defendant received notice of his obligation to register under Montana law, he received all the notice the Due Process Clause requires.

Under the reasoning of *United States v. Kebodeaux*, 133 S. Ct. 2496 (2013), the panel rejected the defendant's argument that Congress lacked the authority under the Property Clause and Necessary and Proper Clause to apply SORNA to him. In so holding, the panel reasoned: (1) the

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

defendant was subject to the Wetterling Act's registration requirements upon his release from prison in May 2008 through August 1, 2008, when SORNA became applicable to him, and his release from federal custody was therefore not unconditional; and (2) because 42 U.S.C. § 14072(i)(2) applied to pre-Act offenders such as the defendant prospectively, not retrospectively, the Wetterling Act's imposition of criminal penalties on individuals who violate the applicable registration requirements does not violate the Ex Post Facto Clause.

The order stated that the parties may file an additional petition for rehearing or rehearing en banc.

## COUNSEL

Lisa J. Bazant, Billings, Montana, for Appellant.

Michael W. Cotter, United States Attorney, J. Bishop Grewell and Marcia Hurd, Assistant United States Attorneys, Billings, Montana, for Appellee.

## ORDER

The opinion filed on October 5, 2012, and appearing at 696 F.3d 922 is withdrawn. The superseding opinion will be filed concurrently with this order. The parties may file an additional petition for rehearing or rehearing en banc.

**OPINION**

IKUTA, Circuit Judge:

This appeal challenges the constitutionality of certain key provisions of the Sex Offender Registration and Notification Act (SORNA). Pub. L. 109-248, §§ 101–55, 120 Stat. 587, 590–611 (codified in scattered sections of U.S.C. (2006)). Defendant Mark Steven Elk Shoulder was prosecuted under 18 U.S.C. § 2250(a) for failing to comply with the sex offender registration requirements set forth in 42 U.S.C. § 16913. He now argues that his conviction was invalid, because SORNA violates the Ex Post Facto Clause and the Due Process Clause, and because Congress lacked the constitutional authority to enact SORNA. We reject these constitutional challenges and affirm the judgment of the district court.

I

The history of Congress's activities in ensuring the registration of sex offenders provides the backdrop to the facts of this case.

A

In 1994, Congress enacted the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act ("Wetterling Act"), Pub. L. No. 103-322, §§ 170101–170303, 108 Stat. 1796, 2038–45 (1994), the first federal act addressing sex offender registration. The Wetterling Act served at least two functions. First, it "used the federal spending power to encourage States to adopt sex offender registration laws." *United States v. Kebodeaux*,

133 S. Ct. 2496, 2501 (2013) (citing 42 U.S.C. § 14071(i) (2000 ed.)).  Specifically, 42 U.S.C. § 14071(a) required the Attorney General to "establish guidelines for State programs" requiring people "convicted of a criminal offense against a [minor] victim," or "a sexually violent offense," to register a current address for a specified time period.  Although the Act did not require states accepting funds to impose this registration requirement retroactively on individuals previously convicted of sex offenses, the Act did "not preclude states from imposing any new registration requirements on offenders convicted prior to the establishment of the registration system." *Final Guidelines for Megan's Law and the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act*, 62 Fed. Reg. 39,009, 39,013 (July 21, 1997).

Second, the Wetterling Act "imposed federal penalties upon federal sex offenders who failed to register in the States in which they lived, worked, and studied." *Kebodeaux*, 133 S. Ct. at 2501 (citing 42 U.S.C §§ 14072(i)(3)–(4)).  Relevant here, § 14702(i)(2) provided that a person who is "required to register under a sexual offender registration program in the person's State of residence and knowingly fails to register in any other State in which the person is employed, carries on a vocation, or is a student," is subject to specified penalties.  Similarly, § 14702(i)(3) imposed a penalty on a person who is "described in section 4042(c)(4) of title 18 [specifying various sex offenses], and knowingly fails to register in any State in which the person resides, is employed, carries on a vocation, or is a student following release from prison or sentencing to probation."

"[B]y 2000, all fifty states and the District of Columbia had both sex offender registration systems and community

notification programs." *United States v. Crowder*, 656 F.3d 870, 872 (9th Cir. 2011) (alteration in original) (internal quotation marks omitted). Montana, the state where Elk Shoulder resided, first enacted a Sexual Offender Registration Act in 1989, even before the Wetterling Act was passed. *State v. Villanueva*, 118 P.3d 179, 181 (Mont. 2005) (explaining that Montana's sex offender registry applied to "sexual offenders who are sentenced by a state or federal court in any state on or after July 1, 1989, or who as a result of a sentence are under the supervision of a county, state, or federal agency in any state on or after July 1, 1989" (internal quotation marks omitted)). Though Montana's act has been amended several times, Elk Shoulder does not dispute its continued applicability to him.

Although most states complied with the Wetterling Act's encouragement to enact sex-offender registration, pre-SORNA registration laws consisted of a "patchwork of federal and 50 individual state registration systems." *Reynolds v. United States*, 132 S. Ct. 975, 978 (2012) (citing 73 Fed. Reg. 38,045 (2008)). To address this problem, in 2006, Congress enacted SORNA "to succeed and enhance the registration requirements of the Wetterling Act." *United States v. Begay*, 622 F.3d 1187, 1190 (9th Cir. 2010).

SORNA is designed to improve the uniformity and effectiveness of sex-offender registration systems by, among other things, "creating federal criminal sanctions applicable to those who violate the Act's registration requirements." *Reynolds*, 132 S. Ct. at 978. SORNA's registration requirement, codified at 42 U.S.C. § 16913, requires all state

and federal sex offenders,[1] to "register, and keep the registration current, in each jurisdiction where the offender" resides, works, or goes to school.[2] A person who fails to register as required by § 16913 may be criminally prosecuted under 18 U.S.C. § 2250(a). This provision requires the government to prove that the defendant: (1) is required to register under SORNA, (2) is a "sex offender" due to a conviction under federal law (or the law of certain other listed jurisdictions) or a person who "travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country" and, (3) knowingly failed to register or update a registration as required by SORNA.[3]

---

[1] 42 U.S.C. § 16911(1) defines "sex offender" to "mean[ ] an individual who was convicted of a sex offense." The term "sex offense" is defined in § 16911(5)(A)(i) to include: "a criminal offense that has an element involving a sexual act or sexual contact with another."

[2] 42 U.S.C. § 16913(a) provides:

> A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.

[3] 18 U.S.C. § 2250(a) states:

> (a) In General.— Whoever—
>
> > (1) is required to register under the Sex Offender Registration and Notification Act;
> >
> > (2) (A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction

Although SORNA imposed various requirements on sex offenders, it did not provide that its registration requirements would apply retroactively to sex offenders convicted before July 27, 2006, SORNA's effective date. *United States v. Valverde*, 628 F.3d 1159, 1162 (9th Cir. 2010). Instead, it gave the Attorney General the authority to enact regulations specifying the applicability of SORNA's registration requirements to pre-Act offenders. *Id*. (citing 42 U.S.C. § 16913(d)). In *Valverde*, we held that the Attorney General did not complete the steps necessary to make SORNA retroactive until August 1, 2008. *Id*. at 1169. Therefore, the requirements of SORNA became applicable to pre-Act offenders on that date. *Id.* The Wetterling Act, however, remained in effect until repealed by SORNA, effective on the later of July 27, 2009, or one year after the software required by SORNA became available. Pub. L. 109-248, §§ 129(b), 124, 120 Stat. at 600–01, 598.

---

under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or

(B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and

(3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;

shall be fined under this title or imprisoned not more than 10 years, or both.

B

In 1992, before Congress passed the Wetterling Act but after Montana had enacted its registration requirements, Elk Shoulder was convicted in a federal district court in Montana of sexual abuse of a six-year-old child in violation of section 2241(c) of Title 18 of the United States Code.[4]  In 1992, the court sentenced Elk Shoulder to 172 months in prison, followed by five years supervised release.  Upon his release in December 2003, officials informed Elk Shoulder that he was required to register as a sex offender under Montana law.  He registered in Yellowstone County, Montana, where he signed and initialed the state's "Sexual and Violent Offender Registration Form."  By doing so, Elk Shoulder acknowledged that state law required him to maintain a current and updated registration, and that his duty to register would continue for the rest of his life, even after the expiration of probation or parole.

Weeks later, in February 2004, Elk Shoulder was sentenced to thirty months in prison, to be followed by thirty months of supervised release, for violating the terms of his supervised release. Upon Elk Shoulder's second release from prison, in April 2006, he again registered as a sex offender in Yellowstone County.  Congress enacted SORNA on July 26, 2006, but because Elk Shoulder was a pre-Act offender,

---

[4] At the time of Elk Shoulder's conviction, § 2241(c) provided:

> Whoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, knowingly engages in a sexual act with another person who has not attained the age of 12 years, or attempts to do so, shall be fined under this title, imprisoned for any term of years or life, or both.

SORNA did not yet apply retroactively to him. *See Valverde*, 628 F.3d at 1169. In August 2006, Elk Shoulder again violated the terms of his supervised release and was sentenced to another twenty-four months in prison.

Elk Shoulder was released a third time in May 2008. Two months later, on August 1, 2008, SORNA became applicable to pre-Act offenders, including Elk Shoulder. *See id*. After his third release, Elk Shoulder moved around Montana, living at various times in the Northern Cheyenne Indian Reservation, Bozeman, Lame Deer, Billings, and Wolf Point. He did not register as a sex offender in any of these locales.

On February 23, 2009, Elk Shoulder was indicted under 18 U.S.C. § 2250(a) for violating the SORNA registration requirements in 42 U.S.C. § 16913. Before trial, Elk Shoulder brought two motions to dismiss the indictment. In the first, he asserted that SORNA's registration provision exceeded Congress's authority under the Commerce Clause. In the second, he claimed that the retroactive application of these provisions violated the Ex Post Facto Clause. The district court denied both motions. After a bench trial, the court found Elk Shoulder guilty beyond a reasonable doubt. He was sentenced to a term of thirty months' imprisonment, to be followed by five years' supervised release.

On appeal, Elk Shoulder argues that the district court erred in rejecting his constitutional challenges to SORNA. We initially affirmed the district court in an opinion issued on October 5, 2012. But on January 11, 2013, before our opinion became final, the Supreme Court granted certiorari in *United States v. Kebodeaux*, 687 F.3d 232 (5th Cir. 2012) (en banc), *cert. granted*, 133 S. Ct. 928 (2013), a Fifth Circuit case holding that the Necessary and Proper Clause did not

permit Congress to require sex offenders who had been "unconditionally released" from federal custody to register under SORNA. *Id.* at 244–45. Because Elk Shoulder's challenge implicated the Necessary and Proper Clause, we stayed the mandate in this case pending the Supreme Court's decision. On June 24, 2013, the Supreme Court reversed the Fifth Circuit. *Kebodeaux*, 133 S. Ct. at 2500. We subsequently ordered supplemental briefing, asking the parties to address the impact of *Kebodeaux* on Elk Shoulder's case. Having reviewed the parties' supplemental briefs, we now address all of Elk Shoulder's claims.

II

We first consider Elk Shoulder's argument that SORNA's statutory scheme for requiring sex offenders to register and criminalizing certain failures to register violates the Ex Post Facto Clause.

The Constitution provides: "No . . . ex post facto Law shall be passed." U.S. Const. art. I, § 9, cl. 3. As the Supreme Court has succinctly explained, "[l]egislatures may not retroactively alter the definition of crimes or increase the punishment for criminal acts." *Collins v. Youngblood*, 497 U.S. 37, 43 (1990); *see also United States v. Elkins*, 683 F.3d 1039, 1044 (9th Cir. 2012) (holding that the Ex Post Facto Clause "bars the enactment of any law that 'imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'" (quoting *Russell v. Gregoire*, 124 F.3d 1079, 1083 (9th Cir. 1997)).

Elk Shoulder asserts that SORNA's registration requirement constitutes an additional punishment for his

federal sex offense, which he committed in 1991. Because SORNA was not enacted until 2006, he argues that the Ex Post Facto Clause prohibited Congress from applying the registration requirement to him.

Elk Shoulder's argument is foreclosed by our decision in *United States v. Elkins*. In *Elkins*, a defendant who had been convicted of a sex offense under Washington law in 1994 failed to register when he moved from Washington to California in 2010, and was indicted under § 2250. *Elkins*, 683 F.3d at 1041–42. Elkins filed a motion to dismiss the indictment arguing, among other things, that the requirement to register violated the Ex Post Facto Clause in his case because it was punitive in nature and based on a prior conviction that occurred before SORNA's enactment. *Id.* at 1042–44. We concluded that SORNA's registration requirement was not punitive in nature, and therefore did not violate Elkins's constitutional rights. *Id.* at 1045. Because Elk Shoulder also argues that SORNA's registration requirement cannot be applied to him because it is punitive in nature, *Elkins*'s reasoning is equally applicable to Elk Shoulder.

Despite this precedent, Elk Shoulder argues that the Court's analysis in *Smith* "no longer hold[s] true in today's society," and that the purpose and effect of SORNA's registration requirement are punitive in nature. Elk Shoulder focuses on the Supreme Court's holding that the Alaska registration statute does not resemble shaming punishments of the colonial period (the first factor of *Smith*'s five-factor test), and that there was "no evidence that the [registration requirement] has led to substantial occupational or housing disadvantages for former sex offenders that would not have otherwise occurred through the use of routine background

checks by employers and landlords." *Smith v. Doe*, 538 U.S. 84, 100 (2003) (the second factor). According to Elk Shoulder, today SORNA's registration requirement imposes significant hardships on offenders, who are "held to public ridicule by community members," and face difficulty finding and maintaining both employment and housing. He notes that local newspapers frequently maintain interactive maps of the registered residences of sex offenders, and cites "reports of incidents of citizens standing on street corners bearing signs with the names and addresses of offenders blaz[o]ned across the front."

This argument fails. We recently reaffirmed the nonpunitive nature of SORNA in *Elkins*, which we are bound to follow. *See Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc). Further, *Smith v. Doe* contemplated that information from the Alaska sex registration statute would be available on the internet, but determined that such internet notification was nonpunitive because its principal effect was to "inform the public for its own safety, not to humiliate." 538 U.S. at 99. The Court further noted that there was no evidence that the Alaska act had "led to substantial occupational or housing disadvantages for former sex offenders that would not have otherwise occurred through the use of routine background checks by employers and landlords." *Id.* at 100. Because "only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty," *id.* at 92 (internal quotation marks omitted), Elk Shoulder's conclusory statements and handful of anecdotal examples cannot carry the heavy burden of showing substantial changes in society that would require us to revisit the Supreme Court's conclusion.

We thus reject Elk Shoulder's argument that application of the SORNA registration requirements to him on the basis of his earlier conviction violates the Ex Post Facto Clause.

III

We next turn to Elk Shoulder's arguments that SORNA's registration requirements violate his rights under the Fifth Amendment, which bars the federal government from depriving persons of "life, liberty, or property, without due process of law." U.S. Const. amend. V.

Elk Shoulder first asserts that he was deprived of his right to due process because it was impossible for him to comply with SORNA. As noted above, in order to convict Elk Shoulder under § 2250(a), the government had to prove that Elk Shoulder knowingly failed "to register or update a registration *as required by*" SORNA. 18 U.S.C. § 2250(a)(3) (emphasis added). Elk Shoulder points out that SORNA required states to adopt the new procedures for sex offender registries established by the Act, or lose part of their federal funding. 42 U.S.C. §§ 16924(a), 16925. Elk Shoulder argues that, because Montana had not yet conformed its sex offense registry to SORNA's requirements, it was impossible for him to register "as required by" SORNA.

We previously have rejected this argument, both in *United States v. George*, 625 F.3d 1124, 1128–29 (9th Cir. 2010), *vacated on other grounds*, 672 F.3d 1126 (9th Cir. 2012), and in *Elkins*, 683 F.3d at 1046. As we stated in *Elkins*, "the federal government's prosecution of an alleged violation of SORNA is not dependent on the individual state's implementation of the administrative portion of SORNA." *Elkins*, 683 F.3d at 1046; *accord id.* at 1046 n.9

(the "'duty to register in a state registry is independent of a state's degree of implementation of SORNA.'" (quoting *Felts*, 674 F.3d at 603)); *see also United States v. Guzman*, 591 F.3d 83, 93 (2d Cir. 2010); *United States v. Gould*, 568 F.3d 459, 464–65 (4th Cir. 2009). Because Elk Shoulder could have registered with the State of Montana's registry, and because this would have allowed him to register "as required by" SORNA, it was not impossible for Elk Shoulder to meet the requirements of § 2250(a). Thus, this case presents no impossibility-based due process problems.

Second, Elk Shoulder asserts that he did not receive notice that his failure to register as a sex offender would violate SORNA, and therefore he did not receive notice sufficient to comply with the Due Process Clause. This argument is meritless. In order to convict a defendant under § 2250(a), "the government [must] prove that a convicted sex offender knew of a registration requirement and knowingly failed 'to register or update a registration.'" *Crowder*, 656 F.3d at 876 (quoting 18 U.S.C. § 2250(a)(3)). A SORNA defendant's knowledge of his failure to "register or update a registration" as required by state law is sufficient to satisfy the "notice" requirement of the Due Process Clause. *Elkins*, 683 F.3d at 1049–50; *accord United States v. Brown*, 586 F.3d 1342, 1351 (11th Cir. 2009) ("[W]e join our sister circuits in concluding that notice of a duty to register under state law is sufficient to satisfy the Due Process Clause." (internal quotation marks omitted)). The defendant need not know that the same failure also violates SORNA. Thus, because Elk Shoulder received notice of his obligation to register under Montana state law, he received all the notice the Due Process Clause requires.

IV

Finally, Elk Shoulder argues that his release from federal custody in May 2008 was "unconditional," as defined in *Kebodeaux*, 133 S. Ct. at 2501 (defining "unconditional" to mean that, after the defendant's release, "he was not in 'any . . . special relationship with the federal government.'" (quoting *Kebodeaux*, 687 F.3d at 234)), and that Congress therefore lacked the authority under the Property Clause and Necessary and Proper Clause to apply SORNA to him.

A

*Kebodeaux* controls our analysis here. In *Kebodeaux*, a former member of the United States Air Force, Anthony Kebodeaux, had been convicted in 1999 by a court-martial for a federal sex offense. *Id*. at 2500. After serving a three-month prison sentence and receiving a bad conduct discharge, Kebodeaux moved to Texas, where he eventually registered as a sex offender in 2004. After SORNA became applicable to him, he moved within Texas without updating his sex offender registration, and was prosecuted under SORNA for his failure to register. *Id*. Kebodeaux appealed his conviction on the ground that once he had been unconditionally released from federal custody, Congress did not have the power to criminalize his failure to register. The Fifth Circuit, sitting en banc, agreed. It first held that Kebodeaux had been unconditionally let free from any "special relationship with the federal government" by the time Congress had enacted SORNA. *Kebodeaux*, 687 F.3d at 234. This conclusion was based in part on the Fifth Circuit's determination that the Wetterling Act's registration requirements did not apply to the defendant upon his release from prison. *Id*. at 235 n.4. Because Kebodeaux was not subject to any federal conditions

when SORNA went into effect, the Fifth Circuit concluded, Congress "lacked the power under Article I's Necessary and Proper Clause to regulate through registration [the defendant's] intrastate movements." *Kebodeaux*, 133 S. Ct. at 2500.

The Supreme Court reversed. In explaining the reasons for its disagreement with the Fifth Circuit, the Supreme Court stated that "we need not go much further than the Circuit's critical assumption that Kebodeaux's release was 'unconditional.'" *Id.* at 2501 (quoting *Kebodeaux*, 687 F.3d at 234). Contrary to the Fifth Circuit, the Supreme Court determined that Kebodeaux was not "an individual who had, prior to SORNA's enactment, been 'unconditionally released,'" but rather was "an individual already subject to federal registration requirements [i.e., the Wetterling Act] that were themselves a valid exercise of federal power." *Id.* at 2504. In reaching this conclusion, the Supreme Court focused on § 14072(i) of the Wetterling Act, which imposed federal penalties on convicted sex offenders who failed to comply with the federal registration provisions. *Id.* at 2501. According to the Supreme Court, Kebodeaux had been continuously subject to two different subsections of § 14072(i) from the time of his release from prison. As the Court explained, § 14072(i)(3) imposed federal criminal penalties on individuals described in 18 U.S.C. § 4042(c)(4) who knowingly failed to register in a state where they resided, and Kebodeaux's crime of conviction was one described in § 4042(c)(4). *Id.* In addition, the Court noted that § 14072(i)(4) imposed federal penalties on individuals who were sentenced by a court martial for specified crimes, and who failed to register as a sex offenders, and held that this subsection was also applicable to Kebodeaux. *Id.* at 2501–02. Therefore, the Court concluded that federal

conditions had been continuously imposed on Kebodeaux under the Wetterling Act from the time of his release from prison.

The Court indicated that this conclusion was enough to resolve the case. *Id.* at 2502 ("Both the Court of Appeals and Kebodeaux come close to conceding that if, as of the time of Kebodeaux's offense, he was subject to a federal registration requirement, then the Necessary and Proper Clause authorized Congress to modify the requirement as in SORNA and to apply the modified requirement to Kebodeaux. . . . And we believe they would be right to make this concession." (internal quotation marks omitted)). Nevertheless, the Court went on to consider Congress's authority to enact the Wetterling Act and SORNA. As explained in greater detail below, *see infra* at pp. 22–23, the Court first held that the Wetterling Act, as applied to military sex offenders such as Kebodeaux, was a valid exercise of Congress's authority under the Military Regulation Clause and the Necessary and Proper Clause. *Id.* at 2502–03. Extending this conclusion, the Court held that SORNA, which made few changes to the Wetterling Act, also fell within the scope of Congress's authority under these clauses as applied to Kebodeaux. *Id.* at 2505. Accordingly, the Court concluded that Congress could constitutionally apply SORNA's requirements to an individual like Kebodeaux who had been continuously subject to valid federal registration requirements after his release from prison. *Id.* at 2504.

The same reasoning applies here. As the Court did in *Kebodeaux*, we begin by addressing Elk Shoulder's argument that he had not been in "any . . . special relationship with the federal government" after his release from prison in May 2008. *Kebodeaux*, 133 S. Ct. at 2501. And as in *Kebodeaux*,

this argument does not withstand scrutiny, because Elk Shoulder was continuously subject to one or more of the § 14072(i) requirements in the Wetterling Act. Section 14072(i)(2) imposed penalties on "[a] person who is required to register under a sexual offender registration program in the person's State of residence and knowingly fails to register in any other State in which the person is employed, carries on a vocation, or is a student." This section applied to Elk Shoulder because, upon his release from prison, he was required to register as a sex offender under Montana law. Therefore, Elk Shoulder was subject to the federal requirement to register when he undertook specified activities in other states. In addition, § 14072(i)(3), which was relied upon in *Kebodeaux*, imposed criminal penalties upon a person described in 18 U.S.C. § 4042(c)(4) who "knowingly fails to register in any State in which the person resides, is employed, carries on a vocation, or is a student following release from prison or sentencing to probation." *Kebodeaux*, 133 S. Ct. at 2501. Because § 4042(c)(4) described Elk Shoulder's crime of conviction (as it described Kebodeaux's), § 14072(i)(3) potentially applied to Elk Shoulder.[5] Accordingly, under the reasoning in *Kebodeaux*, Elk Shoulder was subject to the Wetterling Act upon his release from prison in May 2008 through August 1, 2008, when SORNA became applicable to him. His release from federal custody in May 2008 was therefore not "unconditional."

---

[5] Although 18 U.S.C. § 4042(c)(4) was repealed July 27, 2006, Pub. L. No. 109-248, § 141(h), *Kebodeaux* gave no weight to this fact.

B

In response, Elk Shoulder argues that he was not subject to the Wetterling Act upon his release because he was convicted three years before the Act was enacted. Because the Act does not expressly make its provisions applicable to pre-enactment offenders, Elk Shoulder contends that the presumption against the retroactivity of federal statutes applies. *See Vartelas v. Holder*, 132 S. Ct. 1479, 1486–87 (2012). Moreover, Elk Shoulder claims that the presumption against retroactivity has special force here, because retroactively applying the Wetterling Act to Elk Shoulder would violate the Ex Post Facto Clause. *Cf. Clark v. Martinez*, 543 U.S. 371, 381–82 (2005) (explaining that the canon of constitutional avoidance "allows courts to avoid the decision of constitutional questions"). The Supreme Court did not address these issues in *Kebodeaux*, because the defendant in that case was subject to the Wetterling Act "at the time of his offense and conviction." *Kebodeaux*, 133 S. Ct. at 2501.

We reject Elk Shoulder's argument. The Wetterling Act provision applicable to Elk Shoulder, § 14072(i)(2), imposed federal registration requirements on offenders who had an ongoing obligation to register under state law, but spent significant amounts of time in another state. Under its plain language, § 14072(i)(2) attached a new federal obligation to Elk Shoulder based on his status as a current state registrant, not because of his pre-enactment conviction. Elk Shoulder was required to comply with § 14072(i)(2) because he was subject to an ongoing Montana registration requirement when the Wetterling Act became applicable to him, not because he had previously been convicted of a sex offense. By its terms, therefore, § 14072(i)(2) does not operate retroactively.

Moreover, the Supreme Court has explained that statutes imposing requirements on previously convicted individuals in order to address "dangers that arise postenactment" are not retroactive. *Vartelas*, 132 S. Ct. at 1489 n.7. Thus, "[l]ongstanding prohibitions on the possession of firearms by felons," as well as "laws prohibiting persons convicted of a sex crime against a victim under 16 years of age from working in jobs involving frequent contact with minors, and laws prohibiting a person who has been adjudicated as a mental defective or who has been committed to a mental institution from possessing guns," do "not operate retroactively," but rather "target a present danger." *Id*. at 1489 & n.7 (internal quotation marks omitted). Here, the applicable Wetterling Act provisions addressed a post-enactment danger. As later explained in SORNA, they addressed the danger that the public would not be aware of potentially dangerous sex offenders living, working, or attending school in its area. *See* 42 U.S.C. § 16901 (stating that SORNA's purpose is to "protect the public from sex offenders and offenders against children"). Because only a patchwork of state registration requirements existed prior to the Wetterling Act, Congress reasonably addressed the concern that persons already subject to registration requirements in their home state would fail to register in other states where they worked or went to school. *See* § 14072(i)(2).

Because § 14072(i)(2) addressed "dangers that arise postenactment," *Vartelas*, 132 S. Ct. at 1489 n.7, rather than operating retroactively, the Wetterling Act's imposition of criminal penalties on individuals who violate the applicable registration requirements also does not violate the Ex Post Facto Clause. *See Elkins*, 683 F.3d at 1045 ("'SORNA provides for a conviction for failing to register; it does not

increase the punishment for past conviction.'" (quoting *Felts*, 674 F.3d at 606)). We therefore conclude that § 14072(i)(2) applied to pre-Act offenders such as Elk Shoulder prospectively, not retrospectively.[6]

C

Given our determination that Elk Shoulder was continuously subject to federal conditions under the Wetterling Act from the time of his release from prison through the time of SORNA's enactment, *Kebodeaux* compels the conclusion that SORNA can constitutionally be applied to Elk Shoulder.

Once the Court was satisfied that Kebodeaux had never been "unconditionally released," *Kebodeaux* set forth a chain of logical steps to show why Congress has the authority to apply SORNA registration requirements to him. First, *Kebodeaux* determined that "under the authority granted to it

---

[6] To support his argument that the application of these statutes to him would be retroactive, Elk Shoulder also points to the language in § 14071(a)(1)(A) that requires the Attorney General to establish guidelines for State programs that prospectively require registration of "a person who is convicted of a criminal offense." By requiring registration of a person who "is" convicted, Elk Shoulder argues, Congress did not authorize the retroactive application of the Wetterling Act's registration requirement to a person who "was" convicted in the past.

This argument fails. The language in § 14071(a)(1)(A) cited by Elk Shoulder applies to the Attorney General's promulgation of guidelines for state registration programs, which as noted above did not preclude states from applying registration requirements retroactively. The statute does not impose any obligations on individuals such as Elk Shoulder, and has no bearing on whether §§ 14071(i)(3) and (4) are applicable to persons convicted of a sex crime before the Wetterling Act's enactment.

by the Military Regulation and Necessary and Proper Clauses, Congress could promulgate the Uniform Code of Military Justice" and "could specify that the sex offense of which Kebodeaux was convicted was a military crime under that Code." 133 S. Ct. at 2503. Because Congress "could punish that crime through imprisonment and by placing conditions upon Kebodeaux's release," the Wetterling Act, as applied to Kebodeaux, was within Congress's power. *Id.* (holding that Congress "could make the civil registration requirement at issue here a consequence of Kebodeaux's offense and conviction"). *Kebodeaux* then held that, because "SORNA makes few changes" to the registration requirements when "applied to an individual already subject to the Wetterling Act," Congress could have reasonably determined that SORNA's registration requirements were a "'necessary and proper' means for furthering its pre-existing registration ends." *Id.* at 2505. Accordingly, the Court concluded that "the SORNA changes as applied to Kebodeaux fall within the scope Congress' authority." *Id.*

The same chain of logic applies in this case. Here, the Property Clause, U.S. Const. art. IV, § 3, cl. 2,[7] gives Congress the authority to "make all needful Rules and Regulations respecting the Territory or other Property

---

[7] In full, the Property Clause provides:

> The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States; and nothing in this Constitution shall be so construed as to Prejudice any Claims of the United States, or of any particular State.

U.S. Const. art. IV, § 3, cl. 2.

belonging to the United States."   Elk Shoulder does not dispute that, when read with the Necessary and Proper Clause, this enumerated power authorized Congress to enact Elk Shoulder's crime of conviction, which prohibited a person from knowingly engaging in a sex act with a person under twelve years of age "in the special maritime and territorial jurisdiction of the United States or in a Federal prison."   18 U.S.C. § 2241(c); *see also United States v. Comstock*, 130 S. Ct. 1949, 1964 (2010) ("Congress has the implied power to criminalize any conduct that might interfere with the exercise of an enumerated power . . . ."). In light of *Kebodeaux*, it follows that, because Congress could punish Elk Shoulder's crime by imprisoning him, it could also apply the Wetterling Act's conditions to him after his release. *See Kebodeaux*, 133 S. Ct. at 2505.   And as in *Kebodeaux*, because Elk Shoulder was subject to the Wetterling Act, Congress could have reasonably found that the SORNA's conditions made "few changes" and were a "'necessary and proper' means for furthering its pre-existing registration ends." *Id*.   Accordingly, under the reasoning in *Kebodeaux*, we conclude that the SORNA requirements as applied to Elk Shoulder "are within the scope of Congress' authority." *Id*.[8]

---

[8] For the first time in his petition for rehearing, Elk Shoulder contends that the federal government had jurisdiction to prosecute him under 18 U.S.C. § 2241(c) solely by virtue of the Major Crimes Act, 18 U.S.C. § 1153, which "permits the federal government to prosecute Native Americans in federal courts for a limited number of enumerated offenses committed in Indian country that might otherwise go unpunished under tribal criminal justice systems." *United States v. Other Medicine*, 596 F.3d 677, 680 (9th Cir. 2010). Based on this assertion, Elk Shoulder argues that Congress lacked the authority to impose SORNA registration requirements on him because the Major Crimes Act "must be construed narrowly, in favor of limited incursion on Native American sovereignty." *Id*.

V

Because SORNA violates neither the Ex Post Facto Clause nor Elk Shoulder's constitutional right to due process, and because Congress acted within its enumerated powers in enacting SORNA and applying it to individuals like Elk Shoulder, we affirm the judgment of the district court.

**AFFIRMED.**

---

We disagree.  Although the "canons of construction favoring Native Americans," *id.*, may require a narrow construction of § 1153, it is undisputed that Elk Shoulder was validly made subject to and then convicted under § 2241(c).  Under *Kebodeaux*, if Congress had the authority to promulgate and apply § 2241(c) to Elk Shoulder, then Congress had the implied power to impose SORNA requirements on Elk Shoulder to further congressional ends.  133 S. Ct. at 2505.  Because Elk Shoulder raises no argument as to why the Major Crimes Act affects *Kebodeaux*'s analysis in this regard, we reject his argument.