O’Donnell, J.,
concurring in judgment only.
{¶ 39} I concur with the majority’s judgment to affirm the court of appeals, because there is no merit to Travis Blankenship’s claim that his classification as a *232 Tier II sex offender subjects him to cruel and unusual punishment. It clearly does not.
{¶ 40} In my view, the Eighth Amendment does not apply to this case, because I believe that sex offender registration in Ohio is a civil, nonpunitive requirement. Ohio’s current sex offender registration statute, 2007 Am.Sub.S.B. No. 10 (“S.B. 10”), does not substantially differ from prior versions of the statute upheld in State v. Cook, 83 Ohio St.3d 404, 700 N.E.2d 570 (1998), State v. Williams, 88 Ohio St.3d 513, 528, 728 N.E.2d 342 (2000), State v. Hayden, 96 Ohio St.3d 211, 2002-Ohio-4169, 773 N.E.2d 502, State v. Wilson, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, and State v. Ferguson, 120 Ohio St.3d 7, 2008-Ohio-4824, 896 N.E.2d 110, cases recognizing that sex offender registration is not a form of punishment.
{¶ 41} The General Assembly enacted S.B. 10 in compliance with the federal Adam Walsh Child Protection and Safety Act, 42 U.S.C. 16901 et seq. To avoid losing federal funds allocated to Ohio, the legislature followed a federal mandate to designate offenders and classify them as Tier I, II, or III sex offenders based on the offense of conviction and to require them to register for the durations and frequencies specified by federal law.
{¶ 42} In direct conflict with this court’s recent decisions in State v. Williams, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, and In re C.P., 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729, every federal circuit court to consider the issue has recognized that the federal sex offender registration scheme, which Ohio adopted, does not impose additional criminal punishment on sex offenders. In fact, in its most recent pronouncement, the United States Supreme Court described the federal sex offender registration law as establishing “[a] civil registration requirement” that “is eminently reasonable.” United States v. Kebodeaux, — U.S.-, 133 S.Ct. 2496, 2503, 186 L.Ed.2d 540 (2013).
{¶ 43} Until the decisions in Williams and C.P., Ohio recognized registration as a civil requirement, not punitive or criminal in nature. Instead of diametrically changing Ohio law, we should follow our precedent and established federal law and hold that classifying Blankenship as a Tier II sex offender does not punish him for an offense and therefore cannot violate the United States Constitution’s prohibition against cruel and unusual punishment.
Ohio History of Sex Offender Registration
{¶ 44} A review of the prior sex offender registration statutes, 1996 Am.Sub.H.B. No. 180 (“H.B. 180”), 146 Ohio Laws, Part II, 2560, subsequently amended by 2003 Am.Sub.S.B. No. 5 (“S.B. 5”), 150 Ohio Laws, Part IV, 6558, and our decisions interpreting them sheds light on whether S.B. 10 imposes punishment on sex offenders.

*233
Megan’s Law

{¶ 45} In 1996, the General Assembly enacted H.B. 180, better known as “Megan’s Law.” That act revised R.C. Chapter 2950 and established a comprehensive system of sex-offender classification and registration, which applied regardless of when the underlying sex offense had been committed. Former R.C. 2950.04(A), 146 Ohio Laws, Part II, at 2609-2610. The act also provided criminal penalties for failing to comply with its registration requirements. Former R.C. 2950.99, id. at 2634-2635.
{¶ 46} Megan’s Law divided sex offenders into three categories: sexually oriented offenders, habitual sex offenders, and sexual predators. Former R.C. 2950.09, id. at 2618. It provided in former R.C. 2950.06(B)(2) and 2950.07(B)(3), id. at 2613 and 2617, that anyone convicted of a sexually oriented offense would be subject to annual reporting requirements for a period of ten years.
{¶ 47} Having convicted an offender of a sexually oriented offense, if a judge determined that the offender had a previous conviction for a sexually oriented offense, then former R.C. 2950.09(E), 146 Ohio Laws, Part II, at 2623-2624, required the court to adjudicate the offender a habitual sex offender, thereby subjecting the offender to annual reporting for 20 years pursuant to former R.C. 2950.06(B)(2) and 2950.07(B)(2), id. at 2613, 2617.
{¶ 48} The General Assembly reserved the most stringent reporting requirements for offenders who had been adjudicated by a court to be a sexual predator. Megan’s Law required sexual predators to report every 90 days for life, former R.C. 2950.06(B)(1) and 2950.07(B)(2), 146 Ohio Laws, Part II, at 2613, 2616-2617, unless the court removed that classification pursuant to former R.C. 2950.09(D), id. at 2621-2623.
{¶ 49} Megan’s Law required all sex offenders to register with the sheriff in the county in which they resided or were temporarily domiciled for more than seven days. Former R.C. 2950.04(A), id. at 2609. It required sex offenders to provide a current residence address, the name and address of any employer, any other information required by the Bureau of Criminal Identification and Investigation, and a photograph. Former R.C. 2950.04(C), id. at 2610. Additionally, the law required sexual predators to provide the license plate number of each motor vehicle owned by the offender or registered in the offender’s name. Id.

Challenges to Megan’s Law

{¶ 50} We considered several challenges to the constitutionality of Megan’s Law, and each time, our analysis focused on whether the requirements the law enacted were punitive or civil in nature.
{¶ 51} In State v. Cook, 83 Ohio St.3d 404, 700 N.E.2d 570, we considered the constitutionality of Megan’s Law as applied to offenders who committed sexually *234 oriented offenses before the effective date of the statute. We held that the law did not violate Article II, Section 28 of the Ohio Constitution, the Retroactivity Clause, because the registration requirements provided in the act were necessary to achieve the legislature’s remedial purpose of protecting the public from sexual offenders. Id. at 412-413. Although we recognized that Megan’s Law increased the frequency and duration of reporting beyond that required by prior law, id. at 411, we determined that these provisions only “us[ed] past events to establish current status” and constituted “de minimis procedural requirements” necessary to achieve the purpose of the act, id. at 412.
{¶ 52} Additionally, in Cook, we rejected an ex post facto challenge to Megan’s Law, explaining that the statute did not contain any language expressing an intent to punish sex offenders for prior conduct, id. at 417, nor could it be considered to be punitive in practical effect, id. at 423. Rather, the statutory scheme furthered the stated legislative purpose of protecting the public from sexual offenders. Id. While weighing the seven nonexhaustive guideposts set forth in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963),[3] for deciding whether a statute is punitive for purposes of federal law, we determined that the act did not impose a new affirmative disability or further the traditional aims of punishment, but imposed an inconvenience comparable to the renewal of a driver’s license. Cook at 418, 420. Because we concluded that the registration requirements were not punitive, but remedial, in nature, we held that the retrospective application of Megan’s Law did not violate the Ex Post Facto Clause of the United States Constitution. Id. at 423.
{¶ 53} Again, in State v. Williams, 88 Ohio St.3d at 528, 728 N.E.2d 342, relying on Cook, we held that because Megan’s Law did not impose punishment, it necessarily did not violate the Double Jeopardy Clauses of the Constitutions of the United States and the state of Ohio.
*235 {¶ 54} And in State v. Hayden, 96 Ohio St.3d 211, 2002-Ohio-4169, 773 N.E.2d 502, we considered whether Megan’s Law violated an offender’s right to procedural due process by imposing a sex offender classification and registration requirement without a judicial hearing. Adhering to our holdings in Cook and Williams, we determined that an offender suffers neither bodily restraint nor other punishment as a result of the de minimis registration requirements imposed by Megan’s Law, and therefore due process did not require a court to conduct a hearing before finding a defendant to be a sexually oriented offender. Id. at ¶ 14-15, 18.

S.B. 5

{¶ 55} In 2003, the General Assembly enacted S.B. 5, amending Megan’s Law to provide, inter alia, that regardless of when a sexually oriented offense occurred, sex offenders had to personally register with the sheriff of the county in which they (a) resided or were temporarily domiciled for more than five days, (b) attended school, and/or (c) worked for more than 14 days or for an aggregate of 30 days or more in a calendar year. Former R.C. 2950.04(A)(1), 150 Ohio Laws, Part IV, at 6657-6658. The act imposed a duty upon sex offenders to report not only their home address but also the address of their school and place of employment. Former R.C. 2950.06(A), id. at 6673. Adult offenders classified as sexual predators could no longer petition to remove the designation. Former R.C. 2950.07(B)(3) and 2950.09(D)(1), id. at 6683, 6696. Additionally, the act provided that any information provided by sex offenders to the county sheriff was available for public inspection, and it directed the attorney general to establish an Internet database providing this information to the public. Former R.C. 2950.081, 2950.13(A)(11), id. at 6686, 6728-6729.

Challenges to S.B. 5

{¶ 56} In State v. Wilson, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, we considered whether Megan’s Law remained a civil, regulatory scheme following its amendment by S.B. 5. The issue in Wilson concerned whether an appellate court should apply a civil or criminal standard of review to a trial court decision not to classify an offender as a sexual predator. Following Cook and Williams, we held that sex-offender-classification proceedings were civil in nature, not criminal. Wilson, at ¶ 32. We concluded that courts reviewing the outcome of sexual-predator-classification hearings should apply the civil manifest-weight-of-the-evidence standard and affirm a trial court judgment if it was supported by some competent, credible evidence. Id.
*236 {¶ 57} In State v. Ferguson, 120 Ohio St.3d 7, 2008-Ohio-4824, 896 N.E.2d 110, we addressed retroactivity and ex post facto challenges to R.C. Chapter 2950, as amended by S.B. 5. Although we recognized that the law “may pose significant and often harsh consequences for offenders,” we explained that the amendments enacted by S.B. 5 had not “transmogrified the remedial statute into a punitive one.” Id. at ¶ 32. Further, we acknowledged the General Assembly’s “clear reaffirmation of an intent to protect the public from sex offenders” and concluded that “the more burdensome registration requirements * * * were not born of a desire to punish.” Id. at ¶ 35-36. Recognizing that “ ‘consequences as drastic as deportation, deprivation of one’s livelihood, and termination of financial support have not been considered sufficient to transform an avowedly regulatory measure into a punitive one,’ ” we determined that the additional burdens imposed by S.B. 5 did not amount to punishment. Id. at ¶ 39, quoting Doe v. Pataki, 120 F.3d 1263, 1279 (2d Cir.1997). Accordingly, we held that the amendments enacted by S.B. 5 did not violate the Retroactivity Clause of the Ohio Constitution. Id. at ¶ 40. Furthermore, based on our conclusion that R.C. Chapter 2950 established a civil, remedial regulatory scheme, we rejected Ferguson’s related ex post facto challenge. Id. at ¶ 43.
The Adam Walsh Act and SORNA
{¶ 58} On July 27, 2006, Congress enacted the Adam Walsh Child Protection and Safety Act (“Adam Walsh Act”) with the expressed intent “[t]o protect children from sexual exploitation and violent crime, to prevent child abuse and child pornography, to promote Internet safety, and to honor the memory of Adam Walsh and other child crime victims.” Title of the Adam Walsh Child Protection and Safety Act, Pub.L. No. 109-248, 120 Stat. 587. This legislation established the Sex Offender Registration and Notification Act (“SORNA”) with the purpose of creating uniform national classification and reporting standards to protect the public from sex offenders and child-victim-oriented offenders. 42 U.S.C. 16901 et seq.
{¶ 59} Congress designed SORNA “to make more uniform what had remained ‘a patchwork of federal and 50 individual state registration systems,’ ” United States v. Kebodeaux, — U.S.-, 133 S.Ct. at 2505, 186 L.Ed.2d 540, quoting Reynolds v. United States, 565 U.S.-, 132 S.Ct. 975, 978, 181 L.Ed.2d 935 (2012), in order to eliminate “ ‘loopholes and deficiencies’ that had resulted in an estimated 100,000 sex offenders becoming ‘missing’ or ‘lost,’ ” id., quoting H.Rep. No. 109-218(1), at 20, 26 (2005). See S.Rep. No. 109-369, at 16-17 (2006). Congress encouraged the states to adopt uniform sex offender registration laws, 42 U.S.C. 16912, or risk losing federal funds otherwise allocated to them, 42 U.S.C. 16925.
*237 {¶ 60} SORNA requires sex offenders to be classified within three tiers based solely on the offense of conviction. 42 U.S.C. 16911. Tier I sex offenders must register annually for 15 years, Tier II sex offenders must register every six months for 25 years, and Tier III sex offenders must register every three months for life. 42 U.S.C. 16915(a); 42 U.S.C. 16916. SORNA also requires sex offenders to update their registration within three business days of changing a residence, employment, or student status, and to provide personal information such as home, work, and school addresses, descriptions of vehicles, a current photograph, and a set of finger and palm prints and a DNA sample. 42 U.S.C. 16913; 42 U.S.C. 16914. These requirements apply to federal sex offenses and include offenders who had already completed their sentences. 42 U.S.C. 16913, 42 U.S.C. 16913(d); 28 C.F.R. 72.3. And Congress made it a federal offense punishable by up to ten years in prison to knowingly fail to register as required by SORNA. 18 U.S.C. 2250.
{¶ 61} The United States Supreme Court has explained that these provisions “reflect Congress’ determination that the statute, changed in respect to frequency, penalties, and other details, will keep track of more offenders and will encourage States themselves to adopt its uniform standards.” Kebodeaux, — U.S. -, 133 S.Ct. at 2505. Characterizing SORNA as providing a “civil registration requirement,” the court stated that “Congress could reasonably conclude that registration requirements applied to federal sex offenders after their release can help protect the public from those federal sex offenders and alleviate public safety concerns.” Id. at 2503. It further indicated that “sex offender registration has ‘a legitimate nonpunitive purpose of “public safety, which is advanced by alerting the public to the risk of sex offenders in their community.” ’ ” Id., quoting Smith v. Doe, 538 U.S. 84, 103, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003), quoting Doe I v. Otte, 259 F.3d 979, 991 (9th Cir.2001).

Challenges to SORNA

{¶ 62} Challenges to the constitutionality of SORNA have been consistently rejected, and every federal circuit court to consider the issue has held that SORNA’s sex offender registration requirements are not punishment. See United States v. Parks, 698 F.3d 1, 5-7 (1st Cir.2012); United States v. Guzman, 591 F.3d 83, 94 (2d Cir.2010); United States v. Shenandoah, 595 F.3d 151, 159 (3d Cir.2010), abrogated on other grounds, Reynolds, 565 U.S. -, 132 S.Ct. 975, 181 L.Ed.2d 935; United States v. Under Seal, 709 F.3d 257, 266 (4th Cir.2013); United States v. Young, 585 F.3d 199, 204-205 (5th Cir.2009); United States v. Felts, 674 F.3d 599, 606 (6th Cir.2012); United States v. Leach, 639 F.3d 769, 773 (7th Cir.2011); United States v. May, 535 F.3d 912, 919-920 (8th Cir.2008), abrogated on other grounds, Reynolds-, United States v. Shoulder, 738 F.3d 948, 953 (9th Cir.2013); United States v. Lawrance, 548 F.3d 1329, 1333- *238 1334 (10th Cir.2008); United States v. W.B.H., 664 F.3d 848, 859-860 (11th Cir.2011); see also Anderson v. Holder, 647 F.3d 1165, 1169 (D.C.Cir.2011) (concluding that the District of Columbia’s Sex Offender Registration Act is civil and nonpunitive).
S.B. 10
{¶ 63} This understanding that SORNA imposes only a civil registration requirement is an essential part of the analysis here, because the Ohio General Assembly enacted S.B. 10 in support of Congress’s effort to adopt a national, uniform system of sex offender registration and notification and in response to the federal mandate to comply with SORNA or risk losing federal funds allocated to Ohio.
{¶ 64} The General Assembly established a civil, remedial system designed to “protect the safety and general welfare of the people of this state” and to “assur[e] public protection,” R.C. 2950.02(B), in light of its determination that “[s]ex offenders and child-victim offenders pose a risk of engaging in further sexually abusive behavior even after being released from * * * confinement,” R.C. 2950.02(A)(2). From the General Assembly’s decision to adopt the Congressional SORNA, which by definition is civil in nature, and its legislative finding that sex-offender-registration laws are necessary to protect the public because sex offenders pose a present danger — not because additional punishment should be inflicted on them — we can infer its intent to establish sex offender registration as a civil, remedial system.
{¶ 65} In accordance with SORNA, S.B. 10 replaced Ohio’s prior sex offender classification scheme with a three-tiered system classifying offenders based on the offense of conviction: an adult Tier I offender is required to register every year for 15 years; an adult Tier II offender is required to register every 180 days for 25 years; and a Tier III offender is required to register every 90 days for life. R.C. 2950.01(E) through (G), 2950.06(B), and 2950.07(B). S.B. 10 also requires offenders to personally register with the sheriff of the county or counties in which they reside, attend school, and work, R.C. 2950.04(A)(2) and 2950.041(A)(2), and the offender must give at least 20 days’ advance notice of a change of residence or school address and provide notice of a change of employment address, vehicle information, e-mail address, Internet identifier, or telephone number within three days of the change, R.C. 2950.05(A) and (D).
{¶ 66} The S.B. 10 provisions do not significantly depart from the civil, remedial registration requirements we have previously upheld, and they are equivalent to the regulations adopted by Congress and held by federal circuit courts to be nonpunitive in nature.
*239 {¶ 67} In contrast to a plethora of established case authority, this court concluded in State v. Williams, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, that the amendments enacted by S.B. 10 rendered R.C. Chapter 2950 punitive. Id. at ¶ 16. The court noted that sex offender registration is based solely on the offense of conviction, without regard to an offender’s future dangerousness; that the offender is required to register in person in the county of residence, the county of employment, and the county of school or college attendance; and that the duration of the registration requirements had been extended. Id. at ¶ 20. And the court stated, “No one change compels our conclusion that S.B. 10 is punitive. It is a matter of degree * * Id. at ¶ 21. And relying on the assumption that sex offender registration is now punishment, the court in In re C.P., 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729, ¶ 58, held that the Eighth Amendment forbids the automatic imposition of lifetime sex offender registration and notification requirements on juveniles.
{¶ 68} But none of the changes identified by Williams rendered sex offender registration in Ohio punitive in intent or effect. The purpose of classifying offenders into tiers based on the nature of the conviction is not to impose punishment for that conviction; rather, it is intended to facilitate a national system of sex offender registration that simplifies the process of classification based solely on the offense committed either in this state or another jurisdiction for the purpose of protecting the public from the risk of recidivism.
{¶ 69} Further, linking the duty to register to a conviction for a sex offense without first requiring an individual assessment of dangerousness or risk of recidivism does not make registration punitive. The United States Supreme Court, in analyzing whether Alaska’s sex offender registration statute imposed punishment on sex offenders, indicated that “[t]he State’s determination to legislate with respect to convicted sex offenders as a class, rather than require individual determination of their dangerousness, does not make the statute a punishment * * *.” Smith, 538 U.S. at 104, 123 S.Ct. 1140, 155 L.Ed.2d 164. The court further noted: *240 Smith at 103. Thus, the court concluded, a state is permitted to make “reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences.” Id.
*239 Alaska could conclude that a conviction for a sex offense provides evidence of substantial risk of recidivism. The legislature’s findings are consistent with grave concerns over the high rate of recidivism among convicted sex offenders and their dangerousness as a class. The risk of recidivism posed by sex offenders is “frightening and high.” McKune v. Lile, 536 U.S. 24, 34, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002) * * *.
*240 {¶ 70} Nor does the duration of the registration requirements render them punishment. The Supreme Court rejected this argument in Smith, explaining that “[t]he duration of the [Alaska] reporting requirements is not excessive. Empirical research on child molesters, for instance, has shown that, ‘Rontrary to conventional wisdom, most reoffenses do not occur within the first several years after release,’ but may occur ‘as late as 20 years following release.’ ” Id. at 104, quoting R. Prentky, R. Knight & A. Lee, Child Sexual Molestation: Research Issues, National Institute of Justice Research Report, 14 (1997). Thus, the duration of registration duties in Ohio corresponds to a continuing risk sex offenders pose to the public.
{¶ 71} Lastly, in-person registration is not a form of punishment. In Cook, 83 Ohio St.3d at 418, 700 N.E.2d 570, we explained that “Registering may cause some inconvenience for offenders. However, the inconvenience is comparable to renewing a driver’s license. Thus, we find that the inconvenience of registration is a de minimis administrative requirement.” And the Supreme Court in Smith rejected the notion that registration is akin to probation or supervised release. Smith, 538 U.S. at 101, 123 S.Ct. 1140, 155 L.Ed.2d 164.
{¶ 72} The reasons advanced in Williams for deciding that S.B. 10 is punishment do not withstand scrutiny. Sex offender registration is not punishment, and therefore we need not decide whether classifying Blankenship as a Tier II sex offender with a duty to report every 180 days for 25 years is proportionate to his offense of having consensual sex with a minor. Questions regarding whether this registration duty is necessary and appropriate in these circumstances do not involve the Eighth Amendment, but rather, these are matters of policy that are the province of the General Assembly, the arbiter of public policy in Ohio.
Conclusion
(¶ 73} There are no significant differences between Megan’s Law, which this court characterized as a civil, remedial enactment designed to protect the welfare and safety of the public, and S.B. 10, which the legislature enacted to conform with the registration and notification requirements established by federal law. In accordance with our prior precedent and in agreement with the federal circuit courts, I would overrule our decisions in Williams and C.P. and hold that sex offender registration is not punishment for an offense. Accordingly, I concur in the judgment to affirm the court of appeals based on this analysis.
Kennedy, J., concurs in the foregoing opinion.

. These guideposts include
“[w]hether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment — retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned * *
(Footnotes omitted, brackets and ellipsis sic.) Cook, 83 Ohio St.3d at 418, 700 N.E.2d 570, quoting Mendoza-Martinez, 372 U.S. at 168-169, 83 S.Ct. 554, 9 L.Ed.2d 644.