FILED
United States Court of Appeals
Tenth Circuit

December 8, 2008

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

KEITH ALLEN LAWRANCE,

     Defendant - Appellant.

No. 08-6034

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. 5:07-CR-00166-D-1)**

---

Robert Gifford, Assistant United States Attorney (John C. Richter, United States Attorney, on the brief), Oklahoma City, Oklahoma, for Plaintiff - Appellee.

Paul Lacy, Assistant Federal Public Defender, Oklahoma City, Oklahoma, for Defendant - Appellant.

---

Before **KELLY**, **SEYMOUR**, and **MURPHY**, Circuit Judges.

---

**KELLY**, Circuit Judge.

---

     Defendant-Appellant Keith Allen Lawrance appeals from his conviction for

failing to register pursuant to the Sex Offender Registration and Notification Act

("SORNA"), 18 U.S.C. § 2250, enacted July 27, 2006. Mr. Lawrance entered a

conditional guilty plea to the indictment, reserving his right to appeal the district court's order denying his motion to dismiss.  See United States v. Lawrance, No. CR-07-166-D, 2007 WL 5271934 (W.D. Okla. Sept. 5, 2007).  He was sentenced to fifteen months' imprisonment and five years' supervised released.  1 R. Doc. 36.  On appeal, he argues that the application of SORNA and its failure to register provisions to his case is unconstitutional because the statute violates (1) the Ex Post Facto Clause, (2) the Commerce Clause, and (3) the Due Process Clause.  Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

## Background

On July 18, 2002, Mr. Lawrance was convicted in Arizona of sexual conduct with a minor under eighteen years old.  2 R. (PSR) 4.  Upon receiving a five-year term of probation, Mr. Lawrance acknowledged in writing his duty to register as a sex offender, his duty if he moves to another state or county to inform the sheriff of the county from which he is moving within seventy-two hours, and his duty to comply with the sex offender registration requirements of any state in which he lives.  2. R. (PSR) 5.  Mr. Lawrance's probation was subsequently revoked, and he received a sentence of eighteen months' imprisonment as a result of his failure to update his address.  2 R. (PSR) 8.

In July 2006, Mr. Lawrance moved from Arizona to Montrose, Colorado, and in November 2006, "just prior to Thanksgiving," Mr. Lawrance and his

-2-

girlfriend moved to Stillwater, Oklahoma, where they lived with the girlfriend's cousin. 2 R. (PSR) 4. Before Christmas 2006, Mr. Lawrance and his girlfriend moved to Oklahoma City, where they lived at approximately five different addresses between December 2006 and June 2007. 2 R. (PSR) 4.

Mr. Lawrance concedes that he "is required to comply with the sex offender registration requirements of any state where he lived," and admits that he failed to update his registration in Arizona, never registered in Colorado, and "knowingly failed to register as a Sex Offender in the state of Oklahoma." 2 R. (PSR) 5. The resulting indictment charges Mr. Lawrance with "knowingly fail[ing] to register as a sex offender in the state [of] Oklahoma as required by the Sex Offender Registration and Notification Act, after leaving the state of Arizona where he failed to update his Sex Offender Registration and thereafter traveled in interstate commerce to the State of Oklahoma" during the period November 2006 through June 20, 2007. 1 R. Doc. 13.

## Discussion

In reviewing constitutional challenges to a statute, our review is de novo. United States v. Parker, 362 F.3d 1279, 1281 (10th Cir. 2004) (Commerce Clause); see also United States v. Morris, 247 F.3d 1080, 1085 (10th Cir. 2001) (same); Femedeer v. Haun, 227 F.3d 1244, 1248 (10th Cir. 2000) (Ex Post Facto); Neely v. Newton, 149 F.3d 1074, 1079 (10th Cir. 1998) (due process).

-3-

I.       Ex Post Facto Clause

Mr. Lawrance first argues that his prosecution under SORNA's failure to register provisions violates the Ex Post Facto Clause. In Calder v. Bull, the Supreme Court held that any law that "inflicts a greater punishment[] than the law annexed to the crime" at the time of its commission or criminalizes any act "done before the passing of the law" violates the Ex Post Facto Clause. 3 U.S. 386, 390 (1798). To violate the Clause, a law "must be retrospective, that is, it must apply to events occurring before its enactment" and "must disadvantage the offender affected by it." Weaver v. Graham, 450 U.S. 24, 29 (1981) (citing Lindsey v. Washington, 301 U.S. 397, 401 (1937); Calder, 3 U.S. at 390). To be criminally liable under SORNA, a sex offender must travel in interstate commerce and "knowingly fail[] to register or update a registration as required by the [Act]." 18 U.S.C. § 2250(a).

Mr. Lawrance makes two arguments: (1) that SORNA's retroactive application punishes him for a sexual offense committed prior to the Act's effective date of July 27, 2006, and (2) that SORNA punishes him for interstate travel occurring prior to July 27, 2006. The district court rejected these arguments. The district court determined that SORNA is a "civil regulatory scheme with neither a punitive purpose nor effect," rather than a means to inflict retroactive punishment on past offenders. Lawrance, 2007 WL 5271934, at *4. It does not punish Mr. Lawrance for his "pre-SORNA conduct; instead, it penalizes

-4-

him for his post-SORNA failure to register." Id. at *5. We recently confronted this issue in United States v. Hinckley, No. 07-7107, slip. op. at 19-25 (10th Cir. 2008), and consistent with that decision, reject these arguments.

Just as in Hinckley, Mr. Lawrance argues that SORNA violates the Ex Post Facto Clause by retroactively increasing punishment for past offenses. While Mr. Lawrance is actually being punished for his failure to register after traveling in interstate commerce, and not for his prior sexual offense, we address his argument in light of SORNA's retroactive registration scheme as a whole. Under Smith v. Doe, we engage in a two-part analysis to determine whether the retroactive application of a statute violates the Ex Post Facto Clause in this fashion. 538 U.S. 84, 92 (2003). First, we "'ascertain whether the legislature meant the statute to establish "civil" proceedings.'" Id. at 92 (quoting Kansas v. Hendricks, 521 U.S. 346, 361 (1997)). If Congress indeed intended via the statute to "enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is 'so punitive either in purpose or effect as to negate [Congress's] intention' to deem it 'civil.'" Id. (quoting United States v. Ward, 448 U.S. 242, 248-49 (1980)). The court normally defers to Congress's stated intent, and therefore "'only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty.'" Id. (quoting Hudson v. United States, 522 U.S. 93, 100 (1997)).

SORNA is both civil in its stated intent and nonpunitive in its purpose,

similar to the scheme in <u>Smith</u>, and therefore does not violate the Ex Post Facto Clause.  Mr. Lawrance attempts to distinguish the statutory scheme in <u>Smith</u>, but it is unavailing.  In enacting SORNA, Congress expressly declared its intent to create a "comprehensive national system for the registration" of sex offenders, "[i]n order to protect the public from sex offenders and offenders against children, and in response to the vicious attacks by violent predators."  42 U.S.C. § 16901.  To overcome this clearly stated congressional intent, Mr. Lawrance draws two distinctions between SORNA and the <u>Smith</u> scheme, arguing that, unlike <u>Smith</u>, (1) the placement of SORNA's failure to register provisions appear in the federal criminal code, and (2) the enforcement of SORNA is vested in the United States Attorney General.

We are not persuaded.  First, the registration provisions in <u>Smith</u> were actually codified in Alaska's criminal procedure code.  <u>See</u> Alaska Stat. § 12.63.010 (2000) (amended 2008); <u>Smith</u>, 538 U.S. at 94.  Moreover, the Supreme Court rejected the argument that "[t]he partial codification of the Act in the State's criminal procedure code" supported "a conclusion that the legislative intent was punitive."  <u>Smith</u>, 538 U.S. at 95.  Second, while the <u>Smith</u> scheme vested enforcement authority in the Alaska Department of Public Safety, "an agency charged with enforcement of both criminal *and* civil regulatory laws," <u>id.</u> at 96, the <u>Smith</u> Court held that such a factor is merely "probative of the legislature's intent," rather than dispositive, <u>id.</u> at 94.  Finally, Mr. Lawrance

-6-

cites an example offered by the Attorney General in his Interim Rule to illustrate the statute's punitive purpose; however, the example simply states that an offender may be held criminally liable for his failure to register after traveling in interstate commerce. See 28 C.F.R. § 72.3 (Feb. 28, 2007). It does not, as he alleges, increase the penalty for his original sex offense. Therefore, under the Smith analysis, SORNA's civil retroactive registration requirements do not violate the Ex Post Facto Clause. See Hinckley, No. 07-7107, slip. op. at 22-25 (discussing SORNA under a Smith analysis).

Mr. Lawrance further argues that SORNA as applied to his case violates the Ex Post Facto Clause because it penalizes his pre-enactment interstate travel. Essentially, he argues that his travel in interstate commerce occurred prior to SORNA's effective date, which he asserts did not become applicable until February 28, 2007, the date of the Attorney General's promulgation of the Interim Rule.[1] In support, he cites several cases that focus on the timing of defendants' travel and the dates of their indictments, most of which are easily distinguishable.[2] Aplt. Br. 13-15. Regardless, we do not find their reasoning

---

[1] In his brief, Mr. Lawrance states that he "left Arizona prior to the Act's effective date and was in Oklahoma prior to the Attorney General's February 28, 2007 order." Aplt. Br. 15.

[2] See United States v. Sallee, 2007 WL 3283739 (W.D. Okla. Aug. 13, 2007) (unpublished) (declining to apply SORNA to a defendant who completed his interstate travel in 2004); United States v. Heriot, 2007 WL 2199516 (D.S.C. July 27, 2007) (unpublished) (declining to apply the Act to a defendant who completed his interstate travel in June 2006); United States v. Muzio, 2007 WL

-7-

persuasive in light of our recent holding in Hinckley regarding the retroactive applicability of SORNA. See Hinckley, No. 07-7107, slip op. at 19-20.

SORNA requires that an offender travel in interstate commerce before he can be held criminally liable for failing to register. See 18 U.S.C. § 2250(a)(2)(B). Intended as a means of preventing sex offenders from evading their registration requirements by crossing state lines, the Act establishes a "national database at the Federal Bureau of Investigation." 42 U.S.C. § 16919(a). The failure to register provisions, codified at 18 U.S.C. § 2250, make clear that all offenders who travel in interstate or foreign commerce and then "knowingly" fail to register shall be criminally liable. A number of district courts, and now circuit courts, have grappled with the question of whether the Act is applicable to offenders who traveled in interstate commerce prior to July 27, 2006, SORNA's date of enactment. See United States v. Husted, No. 08-6010, 2008 WL 4792339 (10th Cir. Nov. 5, 2008) (declining to apply SORNA to a defendant who traveled in interstate commerce prior to July 2006); United States v. May, 535 F.3d 912

2159462 (E.D. Mo. July 26, 2007) (unpublished) (holding SORNA inapplicable to a defendant who traveled during the "gap period" between enactment and issuance of the Interim Rule and was indicted on March 15, 2007); United States v. Marvin Smith, 528 F. Supp. 2d 615 (S.D. W. Va. 2007) (finding the statute inapplicable to past offenders prior to the promulgation of the Interim Rule); United States v. Kapp, 487 F. Supp. 2d 536 (M.D. Pa. 2007) (declining to impose SORNA liability on two defendants indicted prior to promulgation of the Interim Rule); United States v. Bobby Smith, 481 F. Supp. 2d 846 (E.D. Mich. 2007) (declining to apply the Act to a defendant who completed his interstate travel in 2004).

(8th Cir. 2008) (applying SORNA to a defendant who traveled in interstate commerce after July 2006 but before the Interim Rule and failed to update his registration); United States v. Madera, 528 F.3d 852 (11th Cir. 2008) (per curiam) (declining to apply SORNA to a defendant who traveled prior to SORNA's enactment and was indicted prior to the Interim Rule). However, because Mr. Lawrance's interstate travel took place both before and after the July 2006 enactment date, the issue is irrelevant here.

Pertaining to this case, a survey of recent decisions reveals that courts are also split on whether the Attorney General's Interim Rule, issued February 28, 2007, mandates or simply clarifies the retroactive application of the Act to past offenders.[3]  See May, 535 F.3d at 915-19; Madera, 528 F.3d at 857-59; United

---

[3]  The dissent argues that 42 U.S.C. § 16913(d), in its first clause, unambiguously authorizes the Attorney General to make SORNA retroactively applicable to past offenders, which he did through the promulgation of the Interim Rule in February 2007.  Subsection (d)'s second clause, the dissent argues, simply gives the Attorney General the power to prescribe rules for past offenders and those offenders unable to comply with subsection (b)'s initial registration requirements.

As discussed in Hinckley, we disagree, finding that subsection (d) presents a statutory ambiguity, and can also reasonably be read to authorize the Attorney General merely to promulgate rules regarding initial registration requirements for all offenders unable to comply with subsection (b)'s requirements.  Our interpretation of the statute is "not guided by a single sentence or member of a sentence, but [by] the provisions of the whole law, and . .  its object and policy." Dole v. United Steelworkers of Am., 494 U.S. 26, 35 (1990) (quoting Massachusetts v. Morash, 490 U.S. 107, 115 (1989)); see also Aulston v. United States, 915 F.2d 584, 589 (10th Cir. 1990) ("In interpreting the relevant language, however, we look to the provisions of the whole law, and to its object and policy."); United States v. Balint, 201 F.3d 928, 932-33 (7th Cir. 2000).

States v. Beasley, 2007 WL 3489999, at *7-8 (N.D. Ga. Oct. 10, 2007) (unpublished); United States v. Roberts, 2007 WL 2155750, at *1-2 (W.D. Va. July 27, 2007) (unpublished); Muzio, 2007 WL 2159462, at *1-5.  In a factually distinct case, Madera, our sister circuit held that "the plain language of the statute makes clear that Congress gave only the Attorney General the authority to determine SORNA's retroactivity," 528 F.3d at 857, and read the pertinent provision, 42 U.S.C. § 16913(d), as granting the Attorney General the power to specify the retroactive applicability of the Act to offenders convicted prior to July 2006.  Prior to the issuance of the Interim Rule, the court held, the Act did not apply to past offenders.  See Madera, 528 F.3d at 857 ("Congress's use of the word 'shall' indicates that Congress was issuing a directive to the Attorney General specifically to make the [retroactivity] determination.").  However, the Eighth Circuit recently found ambiguity in 42 U.S.C. § 16913(d), resolving the interpretive problem by resorting to the subsection's title, "Initial registration of sex offenders unable to comply with subsection (b) of this section."  See May, 535 F.3d at 918-19 (citing Beasley, 2007 WL 3489999).  In contrast with the

---

Lawrance presents a different factual basis than Hinckley, but our reasoning in Hinckley applies nonetheless.  While Mr. Hinckley's offense occurred solely within the so-called "gap period," Mr. Lawrance not only traveled after SORNA's promulgation from Colorado to Oklahoma, but continued to move from address to address in Oklahoma without registering after the Interim Rule, well after the close of the "gap period" and clearly in violation of the registration requirements laid out in 42 U.S.C. § 16913(a).

Eleventh Circuit, the May court held that "the Attorney General only promulgated the rule as a precautionary measure to '*foreclose*[] such claims [as the defendant's] by making it *indisputably clear* that SORNA applies to all sex offenders . . . regardless of when they were convicted.'" Id. at 919 (quoting 72 Fed. Reg. 8894, 8896 (Feb. 28, 2007)).

In Hinckley, we agreed with the Eighth Circuit that 42 U.S.C. § 16913(d) applies only to those offenders unable to initially register, and not to all offenders convicted prior to July 2006. As we have noted, Mr. Lawrance was convicted of a sexual offense in July 2002, was informed of his duty to register as a sex offender, and did so in Arizona. As a result, the Interim Rule, which deals only with initial registration, simply does not apply to him. Mr. Lawrance traveled in interstate commerce to Oklahoma after July 2006, and failed to update his registration in Arizona or to register in Oklahoma pursuant to the requirements of SORNA. Therefore, his argument that SORNA did not apply to him prior to February 2007, and thus that its application to him violates the Ex Post Facto Clause, fails.

II.    Commerce Clause

Mr. Lawrance next argues that SORNA and its failure to register provisions, 18 U.S.C. § 2250, violate the Commerce Clause because they exceed the authority granted to Congress to regulate interstate commerce. Specifically, he claims that his conduct is purely intrastate because it concerns only his failure

-11-

to register, which has no effect on interstate commerce. SORNA makes it a crime for any sex offender who "travels in interstate or foreign commerce" to "knowingly fail[] to register or update a registration as required by [SORNA]." 18 U.S.C. § 2250(a). Such sex offenders are required to "register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." 42 U.S.C. § 16913(a). While Mr. Lawrance's failure to update and/or register took place within the borders of Arizona, Colorado, and Oklahoma, he traveled in interstate commerce between Arizona and Colorado in July 2006 and, more importantly, from Colorado to Oklahoma in November 2006.

The Supreme Court has enumerated "three general categories of regulation in which Congress is authorized to engage under its commerce power." Gonzales v. Raich, 545 U.S. 1, 16 (2005). "First, Congress can regulate the channels of interstate commerce. Second, Congress has authority to regulate and protect the instrumentalities of interstate commerce, and persons or things in interstate commerce. Third, Congress has the power to regulate activities that substantially affect interstate commerce." Id. at 16-17 (citations omitted); see also United States v. Lopez, 514 U.S. 549, 558-59 (1995). Mr. Lawrance argues that his failure to register did not "substantially affect" interstate commerce under the third prong as discussed in Lopez, and therefore the application of SORNA to his case violates the Commerce Clause. Additionally, he claims that Congress

-12-

exceeded its constitutional mandate with SORNA because it transforms a state matter into a federal crime based on travel that does not relate to registration.

We rejected similar arguments in Hinckley. When referring to a sex offender's failure to register after traveling in interstate commerce, we stated "[w]hether such an activity has a substantial effect on interstate commerce is irrelevant, since the first and second prongs of Lopez confirm Congress's authority to regulate this type of activity." Hinckley, No. 07-7107, slip op. at 29; see also N. Am. Co. v. Secs. and Exch. Comm'n, 327 U.S. 686, 705 (1946) (reiterating the "well-settled principle that Congress may impose relevant conditions and requirements on those who use the channels of interstate commerce in order that those channels will not become the means of promoting or spreading evil, whether of a physical, moral or economic nature" (citing Brooks v. United States, 267 U.S. 432, 436-37 (1925))); Caminetti v. United States, 242 U.S. 470, 491-92 (1917); May, 535 F.3d at 921-22. Elaborating on Congress's regulatory power, the Supreme Court has held that "Congress can certainly regulate interstate commerce to the extent of forbidding and punishing the use of such commerce as an agency to promote immorality, dishonesty or the spread of any evil or harm to the people of other states from the state of origin." Brooks, 267 U.S. at 436. In doing so, Congress may regulate not "conduct *related* to interstate commerce but rather interstate commerce itself–barring from the channels of interstate commerce a class of goods or people." United States v.

-13-

Patton, 451 F.3d 615, 620-21 (10th Cir. 2006) (citing United States v. Rybar, 103 F.3d 273, 288-89 (3d Cir. 1996) (Alito, J., dissenting)) (summarizing cases). Thus, Congress's authority to regulate is not limited to "regulations with a narrowly economic purpose or impact," Patton, 451 F.3d at 621, but rather the Commerce Clause allows "'Congress to keep the channels of interstate commerce free from immoral and injurious uses.'" Heart of Atlanta Motel, Inc. v. United States, 379 U.S. 241, 256 (1964) (quoting Caminetti, 242 U.S. at 491). In fact, the first prong, and even the second prong, of Lopez focuses on statutes that prevent the use of interstate commerce that results in harm to the populations of states other than those where such harm originates. See Brooks, 267 U.S. at 436-37.

Mr. Lawrance relies on United States v. Morrison, 529 U.S. 598 (2000), Lopez, and Jones v. United States, 529 U.S. 848 (2000), which examine statutes in which Congress attempted to prohibit purely intrastate activity via the third category of Lopez–the "substantially affects" prong; however, SORNA clearly intends to regulate interstate activity, *i.e.*, the evasion of sex offender registration requirements by sex offenders who have crossed jurisdictional lines. Mr. Lawrance failed to keep his registration current in Arizona, did not register in Colorado, and then traveled in interstate commerce to Oklahoma after SORNA's July 27, 2006, effective date, evading his registration requirements yet again in Oklahoma. With SORNA, Congress clearly and validly proscribed such evasive

-14-

tactics by offenders who move across state lines, and we must reject Mr. Lawrance's arguments to the contrary.

III.     Due Process

Finally, Mr. Lawrance argues that SORNA's application to his conduct constitutes a due process violation. Specifically, he reiterates his argument that SORNA did not apply to him until the promulgation of the Attorney General's Interim Rule and therefore that he was afforded no statutory notification of SORNA's registration requirements. In Hinckley, we held that such arguments amount to "'ignorance of the law'" claims, Hinckley, No. 07-7107, slip op. at 25 (quoting May, 535 F.3d at 921), and found no due process violation.

In support of his due process claim, Mr. Lawrance also argues that 42 U.S.C. § 16913(d) specifically charges the Attorney General with the power to enforce the Act retroactively, making it applicable to prior offenders. However, as we discussed above, we resolve the ambiguity in subsection (d) by resort to the Act's express purpose and the subsection's title, which clearly indicates that it applies only to violators who are unable to comply with SORNA's stringent initial registration requirements enumerated in subsection (b). In this case, Mr. Lawrance initially registered in Arizona, knew of his obligation to register under state law and the Jacob Wetterling Act, 42 U.S.C. § 14071, and that he was required to keep his registration current. As we have previously discussed, the Attorney General's Interim Rule merely clarified SORNA's applicability to

-15-

offenders in Mr. Lawrance's position; with or without the Interim Rule, SORNA was applicable to such offenders from July 27, 2006, onward.

Furthermore, we disagree with Mr. Lawrance's claim that he was entitled to statutory notification of the penalties for failing to register after traveling in interstate commerce. A "majority of courts have concluded that notice of a defendant's obligations under state law is sufficient to satisfy the Due Process Clause's requirements." Hinckley, No. 07-7107, slip op. at 25 (citing May, 535 F.3d at 921; United States v. Gould, 526 F. Supp. 2d 538, 545 n.8 (D. Md. 2007) (collecting cases)). In fact, Mr. Lawrance admits that he registered in Arizona after his initial conviction in 2002, and that he failed to comply with any state or federal registration requirements after his initial registration, even after signing a written acknowledgment of his duties. He not only knew of his obligation to register and keep his registration current, but he was also arrested nearly a year after SORNA's enactment and four months after the Attorney General issued his Interim Rule. Because his arrest occurred post-SORNA, and even post-Interim Rule, we presume that Mr. Lawrance was familiar with the law. See Cheek v. United States, 498 U.S. 192, 199 ("The general rule that ignorance of the law . . . is no defense to criminal prosecution is deeply rooted in the American legal system."). Mr. Lawrance cannot now claim that he not only did not know about SORNA, but also that this lack of knowledge contributed to his decision to evade well-known and well-established state law registration obligations.

AFFIRMED.

08-6034, *United States v. Lawrance*

**MURPHY**, J., dissenting:

Lawrance was indicted for violating 18 U.S.C. § 2250, which provides in relevant part:

(a) In general.—Whoever—

  (1) is required to register under the Sex Offender Registration and Notification Act;

  (2)(A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or

  (B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and

  (3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;

shall be fined under this title or imprisoned not more than 10 years, or both.

As the plain language of the provision makes clear, three elements must be satisfied for an individual such as Lawrance, who has been convicted of a sex offense only under state law, to violate § 2250. First, the individual must be required to register under SORNA. Second, the individual must travel in interstate or foreign commerce. Third, the individual must knowingly fail to register or update his registration as required by SORNA.

It is undisputed that during some portion of the time period set forth in the indictment, Lawrance was required to register under SORNA as a sex offender and knowingly failed to register or update his registration. *See* Majority Op. at 11. He therefore satisfied the first and third elements of § 2250. Lawrance, however, only undertook the act necessary to satisfy the second element of the offense, interstate travel, before SORNA applied to sex offenders such as himself who had been convicted of their crimes prior to SORNA's effective date, July 27, 2006.

Section 16913(d) of SORNA reads:

The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

42 U.S.C. § 16913(d). On February 27, 2007 the Attorney General issued an Interim Rule:

The requirements of the Sex Offender Registration and Notification Act apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of that Act.

28 C.F.R. § 72.3.

The majority concedes that all of Lawrance's interstate travel occurred prior to February 27, 2007, the date the Interim Rule was issued. It contends, however, that from SORNA's effective date, as opposed to the date of issuance of

the Interim Rule, SORNA applied to all sex offenders no matter their date of conviction. Majority Op. at 9-11. Based on this conclusion, the majority holds that because Lawrance traveled interstate during the gap period between SORNA's July 27, 2006, effective date and the February 27, 2007, Interim Rule, Lawrance satisfied the second element and was thus properly convicted under § 2250.

For the reasons described in Judge McConnell's dissenting opinion in *United States v. Hinckley*, this conclusion is contrary to the unambiguous language of § 16913(d). No. 07-7107, Slip Op. at 1 (McConnell, J., dissenting). As Judge McConnell explained in his *Hinckley* dissent, § 16913(d) has two clauses:

> The first clause says, unambiguously, that the Attorney General has the authority to specify the requirements *of the subchapter*—all of SORNA—to those who were convicted of a sex offense before the date of enactment (July 27, 2006), or its implementation in a particular jurisdiction. This clause provides that the Attorney General 'shall' have the authority to 'specify the applicability' of SORNA to past offenders. Until the Attorney General does so, the Act applies only prospectively, and does not apply to past offenders. . . .
>
> The second clause gives the Attorney General quite a different authority: to prescribe rules for the registration both of those whose offenses predate SORNA and also for "other categories of sex offenders" who, for whatever reason, are unable to comply with the initial registration requirements of SORNA. This clause also does not present any ambiguity. Whereas the Attorney General has the authority to "specify the applicability" of SORNA only as regards sex offenders who were convicted of their offense prior to SORNA's enactment, he can prescribe rules for the registration both of any

pre-SORNA offenders *and* of other categories of sex offender (i.e., groups of offenders who committed their offense after enactment of SORNA) who meet the specified criterion, namely the inability to meet the initial registration requirements of subsection (b). . . . There is no grammatical reason to limit the category of pre-SORNA offenders to those who are unable to comply with subsection (b), for purposes of either clause. Because there is no ambiguity, there is no need to look to the subtitle, the statutory purpose or context, or any other secondary interpretive aids.

*Id.* at 1-3 (McConnell, J., dissenting) (footnotes omitted).

Prior to the February 27, 2007, Interim Rule, SORNA was not applicable to defendants such as Lawrance who were convicted of a sex offense prior to July 27, 2006. Accordingly, because all of Lawrance's interstate travel, the necessary second element of the offense, occurred before the issuance of the Interim Rule, his conviction should be reversed. The majority's statement that Lawrance "continued to move from address to address in Oklahoma without registering after the Interim Rule, well after the close of the 'gap period' and clearly in violation of the registration requirements laid out in 42 U.S.C. § 16913(a)," Majority Op. at 10 n.3, is irrelevant to the issue here because the provision under which Lawrance was convicted, § 2250(a), requires *interstate* travel for a state-law sex offender. Thus, I respectfully dissent.