FILED
United States Court of Appeals
Tenth Circuit

January 27, 2016

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

GARY JAMES NEEL,

Defendant-Appellant.

No. 14-7003
(D.C. No. 6:12-CR-00091-JHP-1)
(E.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **HOLMES**, and **PHILLIPS**, Circuit Judges.

Defendant-Appellant Gary James Neel appeals from his conviction for

failing to register and update his registration as a sex offender in violation of the

Sex Offender Registration and Notification Act ("SORNA"). A jury found Mr.

Neel guilty of knowingly failing to register after he left his residence in

Oklahoma and spent several days at a motel in Denver, Colorado. The district

court then sentenced Mr. Neel to twenty-four months' imprisonment and a five-

year term of supervised release, in part based on a finding that he was a Tier III

---

[*]        This Order and Judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Federal Rule of Appellate
Procedure 32.1 and Tenth Circuit Rule 32.1.

offender under SORNA.

Mr. Neel now challenges the sufficiency of the evidence against him, the reasonableness of his sentence, and the constitutionality of SORNA. Exercising our jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we **affirm** his conviction and sentence.

**I**

**A**

Mr. Neel was convicted of attempted sexual abuse in the first degree in New York in 1998. Under New York law, this conviction constituted a class E felony. *See* N.Y. Penal Law § 130.65 (McKinney 1998) (classifying sexual abuse in the first degree as a class D felony); *id.* § 110.05(6) (classifying attempt to commit a class D felony as a class E felony). As such, Mr. Neel was subject to a maximum sentence that "shall not exceed four years." *Id.* § 70.00(2)(e). However, New York law also provided that, for first-time offenders, "the court, having regard to the nature and circumstances of the crime and to the history and character of the defendant," could "fix a term of one year or less." *Id.* § 70.00(4). The court in Mr. Neel's case availed itself of this provision and sentenced him to 180 days in prison. Under New York law, after service of his prison term, Mr. Neel was required to register as a sex offender for a ten-year period. *See* N.Y. Correction Law § 168-h (McKinney 1998).

In 2006, Congress enacted SORNA as part of the Adam Walsh Child

2

Protection and Safety Act. *See* Pub. L. No. 109–248, 120 Stat. 590 (2006). As relevant here, SORNA requires sex offenders, as defined in the statute, to register in the jurisdiction in which they reside and to update their registration if they change their residence. *See* 42 U.S.C. § 16913.[1] This registration requirement is enforced by criminal sanction; SORNA makes it a crime to knowingly fail to register or update a registration. *See* 18 U.S.C. § 2250(a). Pursuant to regulations promulgated by the United States Attorney General in 2007, SORNA's registration requirements (as well as the accompanying criminal penalty for failing to register) apply retroactively to offenders, like Mr. Neel, who were convicted of sex-related offenses before SORNA was enacted. *See* Applicability of the Sex Offender Registration & Notification Act, 72 Fed. Reg. 8894, 8895–96 (Feb. 28, 2007) (codified at 28 C.F.R. § 72.3).

Mr. Neel appears to have been compliant with his SORNA registration

---

[1]     42 U.S.C. § 16913(a) mandates that "[a] sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." Furthermore, another subsection of SORNA requires a sex offender to keep his registration current. Specifically,

> [a] sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry.

42 U.S.C. § 16913(c).

3

requirement until 2012. Mr. Neel rented a trailer home in Wagoner, Oklahoma. He last registered this Wagoner trailer-home address with the county sex-offender registration unit on August 31, 2012. On September 5, 2012, Mr. Neel returned the trailer keys to the lessor and informed him that he had been offered a printing job in Houston, Texas and would be moving there immediately.

In fact, Mr. Neel traveled to Denver, Colorado, where he checked into a Super 8 Motel. Around September 7, Mr. Neel contacted Beacon Printing ("Beacon"), a commercial printing company in Denver, looking for employment. The owner of the firm put him in touch with the Denver Indian Center Workforce Program, which places individuals with local businesses to receive training. Through this program, Mr. Neel obtained a temporary position at Beacon, and expressed interest in finding permanent employment.

**B**

Mr. Neel was arrested on October 4, 2012, and subsequently indicted by a grand jury for traveling in interstate commerce and failing to register and update his registration as a sex offender between September 5, 2012 and his date of arrest. Mr. Neel moved to dismiss the charge on the grounds that SORNA's registration requirements are unconstitutional. The district court denied the motion.

At trial, the government presented the testimony of several witnesses involved with sex-offender registration in Oklahoma and Colorado in order to

4

prove that Mr. Neel had not met his registration obligation. First, the records custodian at the Wagoner County, Oklahoma Sheriff's Department, testified that Mr. Neel had registered or updated his information with her office on at least twenty different occasions, and that the last such in-person registration was on August 31, 2012. The custodian further described how her office processes completed sex-offender registration forms and submits them by mail to the Oklahoma Department of Corrections in Oklahoma City, which maintains a statewide database. She noted that her office has the ability to "log into and check on [the] status of registrants" in the state's electronic database. R., Vol. II, at 159 (Tr. Jury Trial, dated Mar. 5–6, 2013).

The government also provided the testimony of a Detective Burgess of the Aurora, Colorado Police Department and a Detective Bourgeois of the Denver, Colorado Police Department. Detective Burgess testified that only those who live or work in Aurora are allowed to register with the Aurora Police Department. And someone named Gary Neel had called the office to inquire about registering, but the police department had "no record of Mr. Neel in [its] police database whatsoever." *Id.* at 203. In any event, Detective Burgess testified, Mr. Neel would likely have been unable to register in Aurora, since both the Super 8 Motel where he was staying and the printing company where he was working are located

5

in Denver.[2]

Detective Bourgeois testified that the Denver Police Department's practice regarding in-person sex-offender registration is to "[m]ake sure the[] registration paperwork is completed successfully," and to then "update that information up to the" National Crime Information Center and Colorado Crime Information Center databases. *Id.* at 209. This upload is done "right at th[e] moment" on a "web-based system," so that changes are "effective right then and there on the website and everywhere else that it's displayed." *Id.* at 216–17. He noted that because the Super 8 Motel where Mr. Neel was staying is in Denver, Mr. Neel would have been able to register with the Denver Police Department. However, from the police department's records, it did not appear that Mr. Neel had in fact registered.

Mr. Neel unsuccessfully moved for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure, claiming that the evidence was insufficient to sustain a conviction. And the jury subsequently found him guilty.

**C**

The presentence investigation report ("PSR") prepared by the United States Probation Office assigned Mr. Neel a base offense level of sixteen under § 2A3.5 of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") on the

---

[2] Aurora is a city adjacent to Denver.

basis that he was a Tier III sex offender under 42 U.S.C. § 16911(4).[3] Mr. Neel objected to the PSR, claiming that he should have been classified as a Tier I offender because his underlying sex offense was not punishable by imprisonment of greater than one year. *See generally* 42 U.S.C. § 16911(2) (indicating, by cross-reference to the other Tiers, that an offender's crime qualifies for Tier I only if it is punishable by a prison term of no more than one year). The district court nevertheless found that the PSR's classification was appropriate.

Notably, prior to sentencing, the Oklahoma Supreme Court had declared unlawful the retroactive application of the state's sex-offender registration statute, *see Starkey v. Okla. Dep't of Corr.*, 305 P.3d 1004, 1030 (Okla. 2013), and the state corrections department had determined that Mr. Neel no longer had a duty to register and would be removed from the state's registry. This development engendered some confusion regarding how Mr. Neel would comply with the federal SORNA registration requirement. Mr. Neel argued that requiring him to register would either violate the Tenth Amendment by forcing the state to register him, or run afoul of the Due Process Clause because he would be unable to comply. While admitting that the situation was "a hazy area," R., Vol. II, at 298 (Tr. Sentencing Proceedings, dated Jan. 10, 2014), the district court concluded that "even if the state . . . refuses to allow him to register, the defendant can

---

[3]     The United States Probation Office used the 2012 edition of the Guidelines Manual in drafting the PSR. The parties do not challenge this choice; therefore, as needed, we also refer to this edition.

7

remain in compliance with this condition by providing the probation office . . . documentation from the state registration authority of its inability to register" him, *id.* at 296–97.

The district court ultimately sentenced Mr. Neel to twenty-four months' imprisonment and a five-year term of supervised release. As a special condition of his supervised release, the court ordered Mr. Neel to "inform the Probation Office every 90 days of his inability to register with accompanying documentation from the state registration authority," in the event that "the state in which the defendant resides refuses to allow the defendant to register." R., Vol. I, at 239 (J. Criminal Case, filed Jan. 14, 2014). Mr. Neel lodged this timely appeal.

## II

On appeal, Mr. Neel challenges the sufficiency of the evidence and the reasonableness of his sentence, as well as the constitutionality of SORNA on multiple grounds. We address, and reject, each claim below, and conclude that: (1) the evidence, viewed in the light most favorable to the government, was sufficient to support Mr. Neel's conviction; (2) Mr. Neel was correctly classified as a Tier III offender because his 1998 sex-offense conviction exposed him to a potential sentence of four years; (3) the district court adequately explained how Mr. Neel could attempt to register with the state as a condition of supervised release; and (4) Mr. Neel's Tenth Amendment, ex post facto, and nondelegation

8

challenges to SORNA are foreclosed by controlling precedent from our court.

## A

Mr. Neel first challenges the sufficiency of the evidence supporting his conviction for failing to register as a sex offender. "In reviewing the sufficiency of the evidence . . . this court reviews the record *de novo . . . .*" *United States v. Irvin*, 682 F.3d 1254, 1266 (10th Cir. 2012). We consider "the entire record, including both direct and circumstantial evidence, together with the reasonable inferences to be drawn from it." *United States v. Mendez*, 514 F.3d 1035, 1041 (10th Cir. 2008). We do not, however, "weigh conflicting evidence or consider witness credibility," *United States v. Jones*, 768 F.3d 1096, 1101 (10th Cir. 2014) (quoting *United States v. King*, 632 F.3d 646, 650 (10th Cir. 2011)); instead, our inquiry is limited to determining whether, "viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the defendant guilty of the crime beyond a reasonable doubt," *Irvin*, 682 F.3d at 1266. Thus, to prevail, Mr. Neel must convince us that "no reasonable jury could have reached the challenged verdict." *United States v. Strohm*, 671 F.3d 1173, 1181 (10th Cir. 2011).

Mr. Neel argues that because "jurisdiction" under SORNA is defined as a state, *see* 42 U.S.C. § 16911(10)(A), the government was obligated to prove beyond a reasonable doubt that he did not register anywhere in Colorado. He contends that this burden was not met by the testimony of detectives from only

9

two cities, Denver and Aurora, since he "could have appeared in person at any one of the other 62 counties in Colorado to update his registration under federal law." Aplt. Opening Br. at 13–14.

Even though Detectives Bourgeois and Burgess only represented the police departments of two cities, their testimony, considered as a whole, provided a sufficient basis to conclude that Mr. Neel had not registered elsewhere in Colorado. For example, Detective Bourgeois indicated that Colorado's statewide registration database immediately reflects new entries and that these changes are displayed wherever the web-based system is accessed. Drawing reasonable inferences in the light most favorable to the government, this testimony could have indicated to a jury that by consulting the online state registry, Detective Bourgeois would have been able to determine whether Mr. Neel had registered in some other county in Colorado.

Additionally, both detectives noted that registration in Aurora and Denver is limited to those who either live or work in the area. While this testimony itself is not indicative of the registration policies of other counties, a reasonable juror could have concluded that Mr. Neel's most likely point of contact with the Colorado authorities would have occurred in Denver, where he was staying and working, or nearby Aurora, where he apparently called to inquire about

registering.[4] But law enforcement in neither Denver nor Aurora had any record of Mr. Neel registering.

In short, though seemingly the prosecution could have more thoroughly demonstrated Mr. Neel's failure to register in Colorado by providing statewide evidence,[5] we do not require the government to "exclude every other reasonable hypothesis and . . . negate all possibilities except guilt." *United States v. Wells*, 739 F.3d 511, 528 (10th Cir. 2014) (quoting *United States v. Davis*, 437 F.3d 989, 993 (10th Cir. 2006)). The testimony provided by the Aurora and Denver police

---

[4] We note parenthetically that Colorado Revised Statute § 16-22-108(2) provides that sex offenders "who reside within the corporate limits of any city, town, or city and county shall register at the office of the chief law enforcement officer of such city, town, or city and county." Thus, as a matter of law, it appears that Mr. Neel—who was living and working in the city and county of Denver—was required to register with the Denver Police Department. However, the jury received no instructions regarding this statute or its effect, and we have no reason to believe that this information was otherwise properly before it; therefore, we do not consider the statute in our sufficiency-of-the-evidence calculus.

[5] We have held that "[w]hen an offender leaves a residence in a state, and then leaves the state entirely, that state remains a jurisdiction involved" for purposes of SORNA's reporting requirements. *United States v. Murphy*, 664 F.3d 798, 803 (10th Cir. 2011). Thus, when Mr. Neel abandoned his home in Wagoner, Oklahoma, he was required, within three days, to notify authorities in Oklahoma or Colorado of this change of residence. *See id.* (noting that "registering in a new SORNA jurisdiction can satisfy the obligation" but that "if it takes more than three days to relocate . . . then the sex offender must register [in the former state] . . . within three days of abandoning his former residence"). We conclude that there was sufficient evidence to find that Mr. Neel did not register in Colorado, and note that Mr. Neel does *not* challenge the sufficiency of the evidence demonstrating that he failed to notify Oklahoma authorities of his change in residence within three days of departing.

11

detectives was substantial enough for a reasonable jury to find that Mr. Neel failed to register in Colorado.

**B**

Mr. Neel next argues that the district court's sentence is procedurally unreasonable because the court improperly classified him as a Tier III offender—i.e., "a sex offender whose offense is punishable by imprisonment for more than 1 year." 42 U.S.C. § 16911(4). We review sentencing decisions for procedural reasonableness under an abuse-of-discretion standard. *See United States v. Gordon*, 710 F.3d 1124, 1160 (10th Cir. 2013); *United States v. Lopez-Avila*, 665 F.3d 1216, 1218 (10th Cir. 2011). Legal questions are reviewed de novo, while factual findings are subject to clear-error review. *See Gordon*, 710 F.3d at 1160; *Lopez-Avila*, 665 F.3d at 1218–19.

**1**

At sentencing, the district court concluded that Mr. Neel was a Tier III offender because, regardless of the state court's discretionary imposition of a sentence of less than one year, "the 1998 New York sentencing statute with regard to the convicted offense ha[d] a maximum punishment of four years." R., Vol. II, at 293. Mr. Neel contends that this ruling was erroneous because the New York court found that he was eligible for a sentence of less than one year for his underlying sex offense and the maximum sentence that he faced under New York law was one year in prison. Relying on the Supreme Court's decision in

12

*Carachuri-Rosendo v. Holder*, 560 U.S. 563 (2010), and our decision in *United States v. Brooks*, 751 F.3d 1204 (10th Cir. 2014), he argues that the district court impermissibly relied on "hypothetical facts and hypothetical criminal history" in classifying him as a Tier III offender. Aplt. Opening Br. at 37. However, Mr. Neel's reliance on these two cases is misplaced.

In *Carachuri-Rosendo*, the Supreme Court dealt with the question of whether a defendant's second state misdemeanor drug conviction could be treated as an aggravated felony for removal purposes. Even though the defendant had a prior drug conviction, state prosecutors had not sought or proved a recidivist sentencing enhancement for his second drug conviction. *See* 560 U.S. at 570–71. The federal government began removal proceedings against him, claiming that his second misdemeanor conviction qualified as an aggravated felony because he *could have been* charged for felony recidivist possession due to his prior conviction. *Id.* at 571. The Court rejected this "hypothetical approach." *Id.* at 575–76. It held that where the state prosecutor had "specifically elected to '[a]bandon' a recidivist enhancement under state law," *id.* at 579 (alteration in original) (citation omitted), and the "record of conviction contain[ed] no finding of the fact of [the defendant's] prior drug offense," *id.* at 576, the "mere possibility that the defendant's conduct, coupled with facts outside of the record of conviction, could have authorized a felony conviction under federal law [wa]s insufficient" to establish that he had been convicted of an aggravated felony, *id.*

13

at 582.

In *Brooks*, we held that *Carachuri-Rosendo*'s reasoning governed our analysis of whether a defendant could be deemed a career offender under the Guidelines. *See* 751 F.3d at 1210–11. The appellant in *Brooks* was convicted in Kansas state court of both possessing cocaine with intent to sell and eluding a police officer. *Id.* at 1208. The latter crime carried a presumptive sentence of seven months, although the prosecutor could seek an upward departure. *Id.* However, "[t]he prosecutor did not seek an upward departure, meaning the state court could not have sentenced Defendant to more than seven months imprisonment." *Id.* When the appellant later pleaded guilty to cocaine possession in federal court, the Probation Office sought to qualify the eluding conviction as a second felony for sentencing purposes because eluding a police officer was punishable by over one year in prison for "a defendant with the worst criminal history possible." *Id.* at 1209. In light of *Carachuri-Rosendo*, we concluded that this hypothetical reasoning was unpersuasive; we emphasized that "a recidivist finding could only set the maximum term of imprisonment 'when the finding is a part of the record of conviction.'" *Id.* at 1210 (quoting *Carachuri-Rosendo*, 560 U.S. at 577 n.12).

Thus, we reasoned, "in determining whether a state offense was punishable by a certain amount of imprisonment, the maximum amount of prison time a *particular* defendant could have received controls, rather than the amount of time

14

the worst imaginable recidivist could have received." *Id.* at 1213; *see also United States v. Simmons*, 649 F.3d 237, 243–45 (4th Cir. 2011) (en banc); *United States v. Haltiwanger*, 637 F.3d 881, 884 (8th Cir. 2011) (both rejecting the hypothetical approach to determining whether a state misdemeanor drug conviction qualified as a federal felony in light of *Carachuri-Rosendo*).          However, in our view, *Carachuri-Rosendo* and *Brooks* are distinguishable from Mr. Neel's situation.  In those cases, the state court *could not* impose a higher sentence without the state prosecutor seeking it and proving the necessary additional facts, which the prosecutor did not do.  *See Carachuri-Rosendo*, 560 U.S. at 571 (stating that the state prosecutor failed to seek a sentencing enhancement based on the petitioner's prior conviction); *Brooks*, 751 F.3d at 1208 (noting that the state court could not impose a sentence longer than seven months because the prosecutor did not seek an upward departure).  Consequently, for a federal sentencing court to subsequently treat the state misdemeanors as federal felonies based on the hypothetical possibility that the offenses *could have been* prosecuted as felonies would punish the defendant for prior charges the state prosecutor declined to pursue and prove, and about which the defendant had neither notice nor the opportunity to contest.  *See Carachuri-Rosendo*, 560 U.S. at 576–78 (expressing concern because there was no finding of fact with respect to the prior drug offense, the petitioner did not have notice that the government intended to prove the fact of the prior drug conviction, and there was no "opportunity to challenge

15

the fact of the prior conviction itself"); *Brooks*, 751 F.3d at 1207–08 (noting that the hypothetical approach "would punish a defendant for recidivism without providing him notice or opportunity to contest said recidivism and would 'denigrate the independent judgment of state prosecutors'" (quoting *Carachuri-Rosendo*, 560 U.S. at 580)).

In contrast, with regard to Mr. Neel's underlying sex offense, there was nothing more the state prosecutor needed to charge or prove in order for the court to impose a maximum sentence of up to four years on Mr. Neel. In other words, based on his actual (as opposed to hypothetical) class E felony conviction, the state court was authorized to impose a sentence on him in the default range that topped out at four years; however, the court was also statutorily authorized, in an exercise of its discretion—weighing, *inter alia*, the seriousness of the offense and Mr. Neel's criminal history—to determine that Mr. Neel should be subject to a sentencing range with a maximum of one year, and the court elected the latter. *See* N.Y. Penal Law § 70.00(2)(e) (prescribing a maximum sentence of four years for class E felonies); *id.* § 70.00(4) (stating that "the court *may* impose a definite sentence of imprisonment . . . of one year or less" on a class E felon if the court determines that a longer sentence "would be unduly harsh" (emphasis added)). Crucially, Mr. Neel had notice of, and the opportunity to contest, the facts relevant to the state court's sentencing decision.

Under these circumstances, in sentencing Mr. Neel, the district court here

16

had no occasion to run afoul of *Carachuri-Rosendo* and its progeny. Specifically, the court's decision to treat Mr. Neel as a Tier III offender did not depend on adding hypothetical facts or looking "outside of the record of conviction." *Carachuri-Rosendo*, 560 U.S. at 582. Instead of "attempt[ing] to modify the underlying conviction, . . . the federal [district] court only consider[ed] the state offense *as charged* in the state court." *United States v. Ramirez*, 731 F.3d 351, 358 (5th Cir. 2013) (emphasis added). It did not consider the prior sentence a hypothetical sex offender could have received—which would have been an abuse of discretion—but rather, correctly focused on the actual sentencing range that the particular defendant before it—i.e., Mr. Neel—faced for his prior state offense. Accordingly, Mr. Neel's challenge to his Tier III classification fails.

**C**

Mr. Neel's third claim arises out of the dispute about whether he would be able to register as a sex offender in Oklahoma. After the jury trial had ended, the Supreme Court of Oklahoma determined that the state's sex-offender registration statute could not constitutionally be applied to those individuals, like Mr. Neel, who were convicted before the state statute went into effect. *See Starkey*, 305 P.3d at 1030 ("The Oklahoma Constitution prohibits the addition of sanctions imposed on those who were already convicted before the legislation increasing sanctions and requirements of registration were enacted."). The state

17

subsequently advised Mr. Neel's attorney that Mr. Neel no longer had a duty to register. In light of the state's actions, Mr. Neel claims that the district court's instruction that he attempt to register as a special condition of supervised release is unconstitutionally vague.

We review this challenge to a supervised-release condition for an abuse of discretion, and will reverse if we find "a clearly erroneous finding of fact or an erroneous conclusion of law or . . . a clear error of judgment." *United States v. Bear*, 769 F.3d 1221, 1226 (10th Cir. 2014) (quoting *United States v. Batton*, 602 F.3d 1191, 1196 (10th Cir. 2010)).

Due process necessitates that "laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972); *accord Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926). This principle applies to supervised-release conditions: there is "a separate due process right to conditions of supervised release that are sufficiently clear to inform [a supervisee] of what conduct will result in his being returned to prison." *United States v. Guagliardo*, 278 F.3d 868, 872 (9th Cir. 2002); *accord United States v. Zobel*, 696 F.3d 558, 576 (6th Cir. 2012); *see also United States v. Mike*, 632 F.3d 686, 694 (10th Cir. 2011) (holding conditions regulating a sex-offender's computer use were impermissibly vague where it was "not clear to which computers the conditions in question appl[ied]").

18

Here, it appears that Mr. Neel has cherry-picked excerpts from the sentencing transcript in arguing that the district court's registration requirement is unconstitutionally vague. To be sure, as Mr. Neel notes, the court observed that the Oklahoma Supreme Court's decision made the proper pathway for Mr. Neel to register "a hazy area." R., Vol. II, at 298. However, the court specifically provided a fallback option in case he could not register with the state:

> [E]ven if the state in which the defendant resides refuses to allow him to register, the defendant can remain in compliance with this condition by providing the probation office . . . at every 90 day increment documentation from the state registration authority of its inability to register the defendant.

*Id.* at 296–97. Towards the end of the sentencing hearing, the court again clarified the condition:

> If the state in which the defendant resides refuses to allow the defendant to register, the defendant shall inform the probation office every 90 days of their inability . . . to register with accompanying documentation from the state registration authority.

*Id.* at 306; *see also* R., Vol. I, at 239 (restating this alternative method of compliance in the court's final judgment).

These statements clearly elaborate what Mr. Neel must do in order to avoid "being returned to prison," *Guagliardo*, 278 F.3d at 872: (1) attempt to register every ninety days; (2) if the relevant law enforcement authorities refuse to let him register, obtain documentation from them demonstrating his inability to register; and then (3) present this documentation to his probation officer. Because its

19

instructions are easily comprehensible by a person of ordinary intelligence, the district court did not impose an unconstitutionally vague condition.

**D**

Mr. Neel also raises three constitutional challenges to SORNA under the Tenth Amendment, the Ex Post Fact Clause, and the nondelegation doctrine. "We review challenges to the constitutionality of a statute de novo." *United States v. Hatch*, 722 F.3d 1193, 1196 (10th Cir. 2013). We dispose of each of these challenges in short order because our court has already addressed, and rejected, such constitutional claims in precedential decisions, and Mr. Neel does not point to any intervening Supreme Court decision or en banc ruling of our court that undermines these prior holdings. *See, e.g.*, *In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993) (per curiam) ("We are bound by the precedent of prior panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court."); *accord United States v. Meyers*, 200 F.3d 715, 720 (10th Cir. 2000).

**1**

Mr. Neel argues that SORNA unconstitutionally "forc[es] state officials to enforce and administer a federal regulatory system" in violation of the Tenth Amendment by requiring state officials to accept SORNA registrations even where the state declines to implement SORNA. Aplt. Opening Br. at 16–17. Oklahoma has not created a SORNA-compliant registry; thus, Mr. Neel claims, "if SORNA registration requirements are in effect in Oklahoma, then state

20

officials have been forced to register individuals and administer federal law pursuant to SORNA." *Id.* at 17. *See generally Printz v. United States*, 521 U.S. 898, 935 (1997) ("The Federal Government may neither issue directives requiring the States to address particular problems, nor command the States' officers . . . to administer or enforce a federal regulatory program."); *accord New York v. United States*, 505 U.S. 144, 177 (1992).

However, we recently rejected the argument that "SORNA violates the Tenth Amendment by requiring Oklahoma officials to comply with federal sex offender registration" in *United States v. White*, 782 F.3d 1118, 1127–28 (10th Cir. 2015). We held that nothing in SORNA *compels* Oklahoma officials to act; "SORNA imposes a duty on *the sex offender* to register." *Id.* at 1128 (quoting *Kennedy v. Allera*, 612 F.3d 261, 269 (4th Cir. 2010)); *accord United States v. Alexander*, 802 F.3d 1134, 1136 (10th Cir. 2015); *see* 42 U.S.C. § 16913(a) ("*A sex offender shall* register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." (emphasis added)); *id.* § 16913(c) ("*A sex offender shall*, not later than 3 business days after each change of name, residence, employment or student status, appear in person in at least 1 jurisdiction involved . . . and inform that jurisdiction of all changes . . . ." (emphasis added)).

Further, we concluded that SORNA "simply place[s] conditions on the receipt of federal funds." *White*, 782 F.3d at 1128 (quoting *United States v. Felts*,

674 F.3d 599, 602 (6th Cir. 2012)); *see* 42 U.S.C. § 16925(a) (stating that if a state fails to implement a SORNA-compliant registry, it "shall not receive 10 percent of the funds that would otherwise be allocated for that fiscal year" under the Omnibus Crime Control and Safe Streets Act of 1968). *See generally South Dakota v. Dole*, 483 U.S. 203, 207–08, 211 (1987) (holding that Congress is authorized, under its spending power, to place conditions on federal funds as long as the conditions are related to the general welfare and the purpose of the federal program, unambiguous, and not "so coercive as to pass the point at which 'pressure turns into compulsion'" (quoting *Steward Mach. Co. v. Davis*, 301 U.S. 548, 590 (1937))).

Our position accords with that of every other circuit to have addressed the issue, *see White*, 782 F.3d at 1128 (collecting cases), and Mr. Neel points to no intervening Supreme Court case or en banc decision of our court that casts doubt on *White*'s holding that SORNA does not violate the Tenth Amendment. Accordingly, his challenge fails.

**2**

Mr. Neel next contends that the retroactive application of SORNA to his pre-2006 conviction violates the Ex Post Facto Clause of the Constitution. *See* U.S. Const. art. I, § 9, cl. 3. He argues that, at the time of his 1998 conviction, he was required to register for a period of ten years. *See* N.Y. Correction Law § 168-h (McKinney 1998). After 2006, SORNA retrospectively increased that

22

registration requirement[6] and imposed a criminal penalty for failure to register. The extended registration requirement and the potential criminal sanction, he claims, render SORNA punitive and retroactively increase the punishment for his previous conviction.

This claim is foreclosed by our decision in *United States v. Lawrance*, 548 F.3d 1329 (10th Cir. 2008), where we held that SORNA's registration provision is "both civil in its stated intent and nonpunitive in its purpose . . . and therefore does not violate the Ex Post Facto Clause," *id.* at 1333. The fact that an offender could be prosecuted for failing to register only penalizes post-SORNA conduct, and does not "increase the penalty for [the] original sex offense." *Id.* at 1334. Mr. Neel does not point to any Supreme Court case or en banc ruling of our court that abrogates *Lawrance*. Indeed, perhaps the Supreme Court's most relevant decision supports our holding in *Lawrance*. That is, in *Smith v. Doe*, 538 U.S. 84 (2003), the Court held that a state sex-offender statute that contained a similar registration requirement did not violate the Ex Post Facto Clause, *id.* at 89–90.

Nevertheless, Mr. Neel asks us to revisit and overturn *Lawrance* in light of several state-court decisions concluding that the retroactive application of state

---

[6]     Even if the Tier-classification circumstances were as Mr. Neel would have it—*viz.*, he was classified as a Tier I offender—SORNA would have the effect of increasing his registration term by five years, 42 U.S.C. § 16915(a)(1); however, in light of our conclusion *supra* that Mr. Neel was properly classified as a Tier III offender, SORNA had the effect of increasing his registration period from ten years to "the life of the offender," *id.* § 16915(a)(3).

sex-offender statutes raises ex post facto concerns. *See Starkey*, 305 P.3d at

1030; *Doe v. Dep't of Pub. Safety & Corr. Servs.*, 62 A.3d 123, 137 (Md. 2013);

*State v. Williams*, 952 N.E.2d 1108, 1113 (Ohio 2011); *State v. Letalien*, 985 A.2d

4, 26 (Me. 2009); *Wallace v. State*, 905 N.E.2d 371, 384 (Ind. 2009); *Doe v.

State*, 189 P.3d 999, 1019 (Alaska 2008). Even if we were empowered to

overturn *Lawrance* based on these non-binding state-court decisions (which we

clearly are not), the cases Mr. Neel cites would not persuade us; they largely rely

on *state* constitutional grounds to strike down the retroactive application of *state*

registration requirements, and are thus of limited relevance in assessing the

federal Ex Post Facto Clause implications of SORNA.[7] And our decision in

*Lawrance* is consistent with the consensus among our sister circuits that

SORNA's retroactive application does not violate the federal Ex Post Facto

Clause. *See, e.g.*, *United States v. Shoulder*, 738 F.3d 948, 954 (9th Cir. 2013),

---

[7] Indeed, in many of these cases, state courts have suggested that the language of state ex post facto clauses—even if similar or virtually identical to the federal counterpart—may be construed under state law as providing broader protection. *See Starkey*, 305 P.3d at 1021 ("Although Oklahoma's ex post facto clause is nearly identical to the Federal Constitution's provisions we are not limited in our interpretation of Oklahoma's constitution."); *Doe v. Dep't of Pub. Safety & Corr. Servs.*, 62 A.3d at 137 (expressly declining to limit state ex post facto protection to that provided by the federal Ex Post Facto Clause); *Wallace*, 905 N.E.2d at 377–78 ("The Indiana Constitution has unique vitality, even where its words parallel federal language." (quoting *State v. Gerschoffer*, 763 N.E.2d 960, 965 (Ind. 1998))); *Doe v. State*, 189 P.3d at 1006 (concluding that the United States Supreme Court's holding that Alaska's registration statute did not violate the federal Ex Post Facto Clause did not mean that the same law was valid under Alaska's Ex Post Facto Clause).

*cert. denied*, --- U.S. ----, 134 S. Ct. 1920 (2014); *United States v. Parks*, 698 F.3d 1, 5–6 (1st Cir. 2012); *Felts*, 674 F.3d at 605–06; *United States v. Leach*, 639 F.3d 769, 773 (7th Cir. 2011); *United States v. Shenandoah*, 595 F.3d 151, 158–59 (3d Cir. 2010), *abrogated on other grounds by Reynolds v. United States*, --- U.S. ----, 132 S. Ct. 975 (2012); *United States v. Guzman*, 591 F.3d 83, 94 (2d Cir. 2010); *United States v. Young*, 585 F.3d 199, 202–06 (5th Cir. 2009); *United States v. Gould*, 568 F.3d 459, 466 (4th Cir. 2009); *United States v. Ambert*, 561 F.3d 1202, 1207–08 (11th Cir. 2009); *United States v. May*, 535 F.3d 912, 919–20 (8th Cir. 2008), *abrogated on other grounds by Reynolds*, 132 S. Ct. 975.

Thus, in light of controlling precedent from our circuit—confirmed by the overwhelming body of authority from other federal courts—we reject Mr. Neel's ex post facto challenge.

**3**

Finally, Mr. Neel argues that SORNA unconstitutionally delegates to the United States Attorney General "the authority to 'specify the applicability of the [registration] requirements . . . to sex offenders convicted before the enactment'" of the law. Aplt. Opening Br. at 23 (quoting 42 U.S.C. § 16913(d)). He claims that "[t]his grant of unfettered discretion" violates the principle of separation of powers, as embodied in the nondelegation doctrine, by vesting legislative power in the Executive Branch. Aplt. Opening Br. at 24.

Like his other constitutional challenges, Mr. Neel's nondelegation claim is

doomed by controlling precedent from this court. Specifically, in *United States v. Nichols*, 775 F.3d 1225 (10th Cir. 2014), *cert. granted on other grounds*, --- U.S. ----, 136 S. Ct. 445 (2015), we held that SORNA provides a sufficiently intelligible principle to guide the Attorney General's discretion in applying the registration requirements retroactively. We held that the "general policy upon which SORNA is based," *id.* at 1231—namely, "protect[ing] the public from sex offenders" by establishing "a comprehensive national system for the registration of those offenders," *id.* (quoting 42 U.S.C. § 16901)—coupled with the statute's specification of a detailed registration scheme, "clearly delineated the boundaries of the authority . . . delegated to the Attorney General," *id.* Every one of our sister circuits that has addressed the question is in accord: SORNA does not violate the nondelegation doctrine. *See, e.g.*, *United States v. Richardson*, 754 F.3d 1143, 1145 (9th Cir. 2014); *United States v. Cooper*, 750 F.3d 263, 271 (3d Cir.), *cert. denied*, --- U.S. ----, 135 S. Ct. 209 (2014); *United States v. Goodwin*, 717 F.3d 511, 516 (7th Cir. 2013); *United States v. Keuhl*, 706 F.3d 917, 920 (8th Cir. 2013); *Parks*, 698 F.3d at 7–8; *Felts*, 674 F.3d at 606; *Guzman*, 591 F.3d at 92–93; *United States v. Whaley*, 577 F.3d 254, 264 (5th Cir. 2009); *Ambert*, 561 F.3d at 1214.

As such, Mr. Neel's nondelegation challenge also fails.

## III

For the foregoing reasons, we **AFFIRM** Mr. Neel's conviction and sentence.

ENTERED FOR THE COURT

Jerome A. Holmes
Circuit Judge